MARY A. PRICE, a Widow, *Plaintiff in Error*, v. THE SOUTHERN HOME INSURANCE COMPANY OF THE CAROLINAS, a Foreign Corporation, *Defendant in Error*.

Division A.

Opinion filed July 28, 1930.

340

*Charles J. Schuh* and *VanFleet, Collins & Miller,* for Plaintiff in Error;

*Sutton, Tillman & Reeves,* for Defendant in Error.

ELLIS, J.—H. T. Nelson owned Lot Number 98 on the north side of Thirty-fifth Street North in Belvediere Subdivision, St. Petersburg, Florida. The size of the lot was forty feet front by one hundred and thirty-five feet deep. There were located on the lot one five-room bungalow on the south end and a three-room bungalow and garage on the north end. The garage was connected with the three-room bungalow by a narrow lattice in the form of an arch. The distance which separated the small building from the garage was only about two feet. All the buildings were one-story structures. On the 10th day of December, 1925, Nelson took out a three-year fire insurance policy in the Southern Home Insurance Company in the sum of five thousand dollars, distributed as follows: $3,500 on the story frame building occupied by the owner as a dwelling house and $1,500 on the ''frame building with approved roof and its additions, situate on above described premises, including foundations and occupied as a Servants' House.'' Later the amount of insurance secured by

this policy was, in consideration of an additional premium of $23.65, increased two thousand dollars, as follows: "$5,000.00 on the frame, one story approved roof Dwelling. On Premises described in Policy." and "$2,000.00 on the two story, frame, approved roof Garage Building on premises described in Policy."

The building located on the rear of the lot and described in the policy as a "Frame building, with approved roof, and its additions, situate on above described premises, including foundations, and occupied as a Servant's House" was the three-room cottage with garage attached. It does not appear to have been used as a "Servants' House" at all and may just as accurately have been described as the "approved roof Garage Building." It was not, however, a two-story building, which fact may be assumed to have been known to both insurer, through its agent, and the assured.

The valuation clause of the policy provided that the "insurable values of the buildings herein described are fixed at the following amounts: Dwelling, $4,000.00; Servants' House, $2,000.00; Barn, $......"

The valuation clause constituted one of the conditions upon which the insurance was effected and constituted a warranty "by the assured" and was "accepted as part of this contract," presumably by the insurer.

About six months after the policy was issued Nelson and wife conveyed the property to Mary A. Price, the plaintiff in error here. Seventeen days after the conveyance of the property by Nelson to Mrs. Price, the Insurance Company agreed to the assignment of the policy to Mrs. Price in the following words: "The Southern Home Insurance Company of the Carolinas, hereby consents that the interest of H. T. Nelson as owner of the property covered by this Policy be assigned to Mary A. Price."

On the 6th of August, 1928, the three-room cottage with garage attached was injured by fire. The garage was totally destroyed and the west end of the cottage to which the garage was attached was damaged. The fire occurred about four months prior to the expiration of the policy. The insurance company disclaimed any liability and Mrs. Price brought her action against the company on the policy of insurance.

At the conclusion of the testimony for the plaintiff, counsel for the insurance company moved the court for a directed verdict in its behalf on the grounds: first, that the plaintiff had failed to produce any evidence to entitle her to recover; second, that the evidence showed a material variance between the allegations of the declaration and the evidence adduced and, third, that the plaintiff had failed to make out a *prima facie* case against the defendant. The motion was granted and the jury was directed to return a verdict for the defendant, which it did.

A motion for a new trial was made and overruled and the plaintiff took a writ of error.

Whatever variance existed between the declaration and the evidence consisted in the fact that the ''frame building with approved roof and its additions, situate on above described premises, including foundations and occupied as a Servant's House'' as originally described in the policy, the ''two story, frame, approved roof Garage Building on premises described in Policy,'' as referred to in the increased value clause, was not a ''two-story garage.'' In the valuation clause the cottage and garage was referred to as ''Servants' House.''

There was no material variance between the declaration and the evidence.

The property insured was the small cottage with garage attached, described in the policy as a frame building and

its additions as first written; as a "two story, frame approved roof Garage Building" in the increased insurance indemnity clause and as "Servants' House" in the valuation clause. It is apparent from the words of the policy, which was attached to the declaration and made a part of it, that the mind of the insurer and that of the assured met upon the proposition that the three-room cottage and garage attached—a two units structure: the cottage and garage addition—should be insured against damage by fire. It was in the insurer's own language variously referred to and described as a "frame building, with approved roof, and its additions," a building occupied as a "Servants' House" a "two story, frame, approved roof Garage Building" and as "Servants' House."

The insurer is presumed to know the character of buildings which he insures. He is concerned not so much with their architecture or design as with their value. It is upon the estimated value of the building and the material of which it is constructed that the insurance rate is agreed upon. Whether the building is a one-story or two-story structure, whether a one unit or two unit building, a "Garage Building" or "Frame building and its additions," is a matter of description or identification of the structure covered by the policy. The insurer chose his own words to describe the building which he agreed to insure against damage by fire and now seeks to avoid liability because he described the structure as a two-story building instead of a one-story building. He agreed that the value of that "Garage Building" for purposes of insurance was two thousand dollars and wrote a policy of insurance upon that basis and accepted the applicable premium of his own fixing thereof.

In the policy as originally written the building was referred to and described as a "frame building, with approved roof, and its additions". As thus written there

could be no question that the building destroyed, as well as the one injured, were covered by the policy. In fire policies on buildings it is customary to describe the subject of the insurance as a "building and additions". In determining what are additions the intention of the parties is the real question. The word "additions" has been construed to cover a structure physically, or by use, connected with the main building insured, especially if there is no other building to which the term "additional" can be applied. Bickford v. Aetna Ins. Co., 101 Me. 124, 63 Atl. R. 552, Ann. Cas. 92; Shepard v. Germania Fire Ins. Co., 165 Mich. 172, 130 N. W. R. 626, 33 L. R. A. (N. S.) n. 156.

In the instant case the garage was physically connected with the building covered by the policy and there was no other structure to which the term "additions" could apply. Physical connection with the building insured however is not necessary to bring within the meaning of the word a structure used in connection with the building insured. An insurance policy, like other contracts, is interpreted to give effect to the intention of the parties ascertained from the language used in the instrument as a whole aided by extrinsic evidence of the situation of the parties at the time of executing the contract. Bickford v. Aetna Ins. Co., *supra;* Cargill v. Miller's and Mfg's. Mutual Insurance Co., 33 Minn. 90, 22 N. W. R. 6; Tate v. Jasper Co., Farmer's Mut. Ins. Co., 133 Mo. App. 584, 113 S. W. R. 659; Phenix Ins. Co. v. Martin, (Miss.) 16 S. R. 417; Marsh v. Concord Mut. F. Ins. Co., 71 N. H. 253, 51 Atl. R. 898; Arlington Co. v. Colonial Assurance Co., 180 N. Y. 337, 73 N. E. R. 34.

In determining whether a building is an addition within the terms and meaning of an insurance policy purporting to insure a building and additions the word will not be

treated as mere surplusage but effect will be given to it by applying the term to any building reasonably answering the description if such application is not inconsistent with other provisions of the policy or clearly opposed to the surrounding facts and circumstances existing at the time of the execution of the contract.

The rule that parole evidence of extrinsic facts is admissible to enable a court or jury to apply the descriptive portion of a contract to the subject matter applies to contracts of insurance. Evidence of the situation of the property and the parties as well as other surrounding facts and circumstances at the time of the issuance of the policy is admissible to aid the court in construing the word "additions". The authorities cited above and many others support the principles as announced.

The building insured was the "frame building and its additions". Originally the valuation was agreed upon by insurer and assured at $1500. Later that valuation was increased $500. No new or different building was insured. The subject covered by the original insurance of $1500. remained the same when the value was increased only $500. The description was different in words but the language of the policy, the circumstances existing when the policy was issued, the character of buildings and the knowledge of the parties all show conclusively that the "one story garage" existing on the property constituting an "addition" to the "frame building" and the whole valued at $1500. originally was the identical "addition" referred to in the new valuation clause as the two story frame approved roof Garage Building".

There is no pretense that there was any purpose to shift the insurance from the "frame building and its additions" to a new or different structure called a "two ,story frame, approved roof Garage Building" in the new or

additional insurance value clause. The identical property as referred to in the policy as originally written was increased in insurance value by agreement between the parties from $1500 to $2000 as the basis on which the additional or increased rate was charged.

The second ground of the motion for a directed verdict was without merit. In view of the manner in which the bill of exceptions was made up, its indefiniteness, lack of certainty as to what actually occurred at the trial, it is difficult to ascertain on what ground the trial judge directed a verdict for the defendant. There is a strong inference derived from certain statements contained in the bill of exceptions that the trial judge considered that the defendant was entitled to a verdict on account of the variance which the defendant claimed and which was made the basis of the second ground of the motion. When the plaintiff finished her testimony as to her ownership of the policy of insurance, the property insured and destruction by fire of the garage and injury to the building to which it formed an addition, it appears from a statement made by counsel for the plaintiff that the court had "indicated he would direct a verdict" at the conclusion of the plaintiff's evidence. If that statement is intended to be accepted as part of the bill of exceptions and that this Court should infer therefrom that the court intended to direct a verdict for the defendant it may very easily be understood that plaintiff's attorney deemed it unnecessary to offer evidence of the loss sustained by the fire; that the court thought that a variance existed between the declaration and evidence as to the building covered by the policy and that no evidence of the amount of loss was necessary to be offered.

Plaintiff, however, should have offered to prove the loss or damage sustained and required the trial judge to state

definitely that the verdict was directed on the theory that a variance such as mentioned had occurred.

As plaintiff offered no proof of loss and rested her case without such evidence she was, of course, entitled to no verdict for substantial damages, but we are constrained to believe from the record of the proceedings that to uphold the directed verdict for defendant would be a palpable miscarriage of justice as it appears that the verdict was not directed on the ground of failure to prove damages and the court's premature announcement of its intention probably mislead the plaintiff to the belief that under the circumstances proof of loss was unnecessary.

It may be said nevertheless and with some show of reason that this court should affirm the court's action because a directed verdict for defendant was correct in view of the fact that the plaintiff offered no evidence whatsoever of substantial damages sustained, but the rule applicable in this case is that the plaintiff, in view of the declaration and evidence adduced, was at least entitled to nominal damages. Having declared on the policy and shown the destruction in part by fire of the building insured she was entitled to nominal damages, so the directed verdict was error. See Tedder v. Riggin, 65 Fla. 153, 61 So. R. 244; Blevins v. Smith, 104 Me. 583, 16 S. W. R. 213, 13 L. R. A. 441; 8 R. C. L. 426; 17 C. J. 722.

The conclusion is inescapable therefore that the trial judge deemed that a material variance existed from the case made by the declaration.

The fourth and sixth pleas merely tendered the issue that the garage which was destroyed was not covered by the policy of insurance. The evidence clearly shows the contrary. The third plea which denied the plaintiff's ownership of the property was not sustained and the ninth plea which denied plaintiff's right of action on the ground

that she had failed to supply the defendant corporation with a sworn statement of loss was met by the showing that the defendant denied all liability under the policy.

The judgment for the defendant in this case should be reversed.

Judgment reversed.

TERRELL, C. J., and BROWN, J., concur.

WHITFIELD, P. J., and STRUM and BUFORD, J. J., concur in the opinion and judgment.