THE LIVERPOOL & LONDON & GLOBE INSURANCE COMPANY, LTD., v. ROBERT W. ORRELL.

190 So. 552
En Banc
Opinion Filed July 25, 1939
Rehearing Denied September 25, 1939

*Green & West* and *McKay, Dixon & DeJarnette,* for Plaintiff in Error;

*Marks, Marks, Holt, Gray & Yates,* for Defendant in Error.

BUFORD, J.—Writ of error brings for review judgment in favor of the defendant rendered by the court, jury having been waived.

The suit is against the accommodation endorser on note executed by the purchaser for the balance of purchase price of an airplane, plus premium for insurance thereon. The note was dated December 23, 1929, executed by Florida State Air-ways, Inc., a Florida corporation, to Ryan Aircraft Corporation, a corporation, in the sum of $11,287.35, together with interest and attorneys fees.

Before the note was delivered it was endorsed by the defendant Orrell, accommodation endorser.

Prior to the date of maturity of the first payment on the note for valuable consideration Ryan Aircraft Corporation,

which will hereafter be called Ryan, pursuant to an agreement made between all parties before the closing of the purchase of the airplane, transferred the note and chattel mortgage to Commercial Investment Trust, Inc., which will hereafter be called C. I. T., and C. I. T. advanced the money to pay balance of purchase price of the airplane plus insurance thereon.

For the protection of the maker and endorser of the note and of Ryan and C. I. T., the plane was insured by the Liverpool & London & Globe Insurance Company, a corporation authorized to do business in the State of Florida, which will hereafter be called the Insurance Company.

The policy contained several conditions and limitations which were, *inter alia:*

"(1) That proof of notice of loss be given insurer by insured within four months from date of loss; (2) All claims must be accompanied by certified log books; (3) That an action for loss under the policy be brought within twelve months of loss; (4) Number of passengers limited to five; (5) Plane not to be flown one hour before sunrise or one-half hour after sunset; (6) Plane to be used in 'straight' flying only, no 'stunting' permitted."

Premium on the policy was paid by the maker and included in the note. Policy was issued and made effective on December 23, 1929, as of December 9, 1929. The note and mortgage were purchased by and assigned to C. I. T., as prior agreement, on December 26, 1929. On December 27, 1929, the Insurance Company at the instance and request of C. I. T. issued a rider or endorsement containing what is known as the Standard or "union" mortgage clause to be attached to the policy. That rider contained the following:

"Notwithstanding anything to the contrary herein contained, it is hereby understood and agreed that:

"1. Loss, if any, shall be payable to The Commercial Investment Trust, Inc., or assigns, for or on account of all interest, and it is a condition of this contract that payment so made shall be in full satisfaction of all claims of the Insured named herein. This policy as to the interest therein of the said Commercial Investment Trust, Inc., only shall not be invalidated by any act or neglect of the Insured or owner of the within described property or any act or omission on the part of said insured or owner which shall constitute a breach of warranty or policy condition such as to void the said claim.

"2. If the Insured named herein shall fail to render Proof of Loss, The Commercial Investment Trust, Inc., shall, as if named in this policy as the Insured, but within sixty days after notice of such failure, render Proof of Loss as to its interest, and shall be subject to the provisions of the individual policy as to appraisal and examinations and the times of payment and of bringing suit.

"3. Whenever this Company shall pay The Commercial Investment Trust, Inc., any sum for loss or damage under this policy and shall claim that, as to the Insured or Owner, no liability therefore existed, this Company shall to the extent of such payment be thereupon legally subrogated to all the rights of said Commercial Investment Trust, Inc., against the insured or Owner and in and to all the property held as security for the indebtedness; or this Company may, at its option, pay to said Commercial Investment Trust, Inc., the whole amount due or to become due from the Insured or Owner, with interest, and shall thereupon be entitled to receive a full assignment and transfer of all of the

said Commercial Investment Trust, Inc., against the Insured or Owner and of all property held as security for the indebtedness; but no subrogation shall impair the right of said Commercial Investment Trust, Inc., to recover the full amount of its claim.

"4. In consideration of the issuance of this policy to cover property purchased on the deferred payment basis, it is a further condition of this contract that, in the event of its cancellation as to the Insured or Owner, this Company shall be entitled to retain an earned premium to the time when the interest of The Commercial Investment Trust, Inc., in the insured property shall have ceased, which time, however, shall not extend beyond the expiration date of the policy."

On January 19, 1938, the insured airplane was wrecked and destroyed by falling into Lake Worth while making a flight over that body of water.

The insurance policy was mailed to Florida State Airways, Inc., but was never delivered and was returned to the Insurance Company and it may be assumed from the record that the policy was later delivered to C. I. T.

After the plane was wrecked Orrell notified C. I. T. and requested C. I. T. to give proper notice and make all proper claims against the plaintiff for the value of the plane so as to collect the insurance and discharge defendant's liability as accommodation endorser of the nate. C. I. T. notified plaintiff of the wreck of the plane and that the plane was thereby wrecked and rendered valueless and plaintiff caused an investigation to be made of the loss.

On April 30, 1930, brokers representing the Insurance Company wrote C. I. T. as follows:

"Commercial Investment Trust, Inc.,
"One Park Ave., New York City.
"Attention—Mr. Jos. G. Myerson
"Dear Sir:

"FLORIDA STATE AIRWAYS
POLICY No. A. A. R. 400 182.

"We have to acknowledge receipt of Proof of Loss filed in respect of an accident to the aircraft covered by the above policy on the 19th day of January, 1930.

"From our investigation of the facts surrounding the occurrence, it is quite clear that owing to the breaches of warranties and policy conditions set out in the above policy, no liability in respect of the loss exists on the part of the Insurance Companies, and on their behalf liability is accordingly denied by us.

"Yours very truly,
"BARBER & BALDWIN, INC.
"G. L. Lloyd, Vice-President."

On April 29, 1930, the Insurance Company paid C. I. T. $10,221.61 and on June 12, 1930, the Insurance Company paid C. I. T. the further sum of $750.00. It thereupon took an assignment of the note and chattel mortgage and later filed suit against the accommodation endorser, Orrell.

The note was in default when the assignment was taken.

It must be noted that C. I. T. not only held the note with the chattel mortgage as collateral but also held the insurance policy with the rider thereon as collateral.

It is contended that neither the insured nor Orrell made Proof of Loss, but the record shows that Proof of Loss was made by C. I. T. on blanks prepared for that purpose on April 28, 1930.

On April 30, 1930, brokers for the Insurance Company acknowledged receipt of Proof of Loss and denied liability.

The record shows that the Insurance Company investigated the loss and thereafter paid over to C. I. T. the full amount of the insurance but took an assignment of the note and collateral as hereinabove stated.

The record discloses a lot of technical pleading and contentions, but we think it is unnecessary for us to discuss all the contentions presented.

It appears to have been well known to all parties concerned that Orrell was an accommodation endorser.

The insurance policy was pledged as collateral security for the payment of the note upon which Orrell was, and was known by all parties to be, accommodation endorser. The note and collateral was assigned to the Insurance Company after maturity. Therefore, all defenses available to Orrell as against C. I. T. were available against the endorsee or assignee of the note after maturity.

In the case of Northern Bank & Trust Co. v. Slater, Watt & Co., 123 Wash 528, 212 Pac. 1063, it was said:

"Where the indorser of a note indorsed it in reliance on collateral securing it, he was entitled on payment of the note to delivery to him of the collateral, and withholding it was, as to him, a conversion."

And it was also said:

"Where one indorsed a note in reliance on collateral securing it, but the holder put the collateral out of its control, the indorser's liability terminated on his making a tender coupled with a demand for the return of the collateral."

The record shows that Orrell offered to pay the note on condition that C. I. T. assign and deliver to him the collateral including the insurance policy. Under existing conditions he was entitled to have this assignment and was,

therefore, within his rights to make such assignment and delivery to him a condition of payment and when C. I. T. failed and refused to perform its duty in that regard it made it unnecessary for Orrell to make further tender.

In Fridenberg v. Robinson, 14 Fla. 130, it was said:

"There is no obligation of active diligence on the part of the holder to sue the acceptor or any other party, and he may be passive and forbear to sue as long as he chooses; but he must not so agree to give time to the acceptor as to preclude himself from suing him, and suspend his remedy against him in prejudice of the drawer and endorsers. Story Prom. Notes No. 414, 419, and cases cited. In Gould v. Robson, 8 East 576, the holder of a bill upon its becoming due received part payment of the acceptor and took a new bill from him at a future short date for the remainder and agreed to keep the original bill in his hands as security. He now sued the defendant as endorser, and this was relied on as a defense. Lord Ellenborough said: 'How can a man be said not to be injured if his means of suing be abridged by the act of another? If the plaintiffs, holders of the bill, had called immediately upon the defendant for payment as soon as the bill was dishonored, they might immediately have sued the acceptor and the other parties on the bill. The holder has the dominion of the bill at the time; he may make what arrangements he pleases with the acceptor, but he does that at his peril. If he thereby alter the situation of any other party on the bill to the prejudice of that person, he cannot afterwards proceed against him."

In Sumner v. Osborne, 101 Fla. 742, 135 Sou. 513, it was held:

"Whether a paper purporting to be an assignment of a mortgage shall be held an assignment which preserves and keeps the mortgage alive, or, in legal effect, to operate as a

payment and discharge, which extinguishes the mortgage, does not so much depend upon the form of words used, as upon the relations between the parties advancing the money, and the party executing the transfer or release, and their relative duties."

"If money paid to the owner of a first mortgage is advanced by one whose duty it is, by contract or otherwise, to pay and cancel the first mortgage and also a second mortgage, and relieve the mortgaged premises of the lien of the first mortgage, a duty in the proper performance of which the second mortgagee has an interest, the payment thereof shall be held, as to the maker of the first mortgage and as to the second mortgagee, to be a release and not an assignment, although an instrument in form purporting to be an assignment is given to the one so advancing the money."

In the case of Wright v. North River Ins. Co., 23 Fed. (2d) 548, Circuit Judge Walker, speaking for the court, said:

"The appellant was an accommodation indorser of the note mentioned, and was secondarily liable thereon. Hemingway's Annotated Mississippi Code of 1927, Nos. 2607, 2642, 2770; Skinner v. Mahoney, 140 Miss. 625, 106 So. 211. This being so, the appellant's liability on the note was discharged to the extent that the payee, the bank, was paid what was owing on the note by the maker of it, from the proceeds of property conveyed to secure it, or from the proceeds of insurance against fire of such property, with loss payable to the bank as its interest may appear, unless a different result is required by a Mississippi statute which was invoked. That statute prescribes the terms of a loss payable clause required to be included in each fire insurance policy on buildings taken out by a mortgagor or grantor

in a deed of trust, which clause makes the policy binding as between the insurer and the mortgagee or grantee in the deed of trust, though it is avoided as between the insurer and the insured on account of some act or omission of the insured not known to the mortgagee or grantee in the deed of trust, and provides that whenever the insurer 'shall pay the mortgagee or trustee any sum for loss or damage under the Policy and shall claim that as to the mortgagor or owner no liability therefor exists,' the insurer 'shall, to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all security held as collateral to the mortgage debt, or may, at its option, pay to the mortgagee (or trustee), the whole principal due or to grow due on the mortgage, * * * and shall thereupon receive a full assignment and transfer of the mortgage and of all such other securities.' Hemingway's Mississippi Code of 1917, No. 5060. The prescribed loss payable clause by operation of law is read into each insurance policy required to contain it, though the loss payable clause actually contained in the policy is not in the terms prescribed in the statute. Aetna Ins. Co. v. Cowan, 111 Miss. 453, 71 So. 746.

"The above cited statute does not purport to empower a mortgagee or trustee of insured property to assign to the insurer any right not possessed by such mortgagee or trustee, to prevent a security given by an insured debtor from inuring to the benefit of his surety or accommodation indorser, as well as to the benefit of his creditor, or of impairing a right in or to the security of such surety or accommodation indorser. It is apparent from the above statement that it was intended by the parties to the loan by the bank that the appellant as well as the bank was to be a beneficiary of the deed of trust mentioned and of the

statutory loss payable clause, that the insurance against fire of property conveyed as security, being a means of making good, in whole or in part, the loss by fire of such property, should inure to the benefit of the appellant, as well as the bank, and that appellant was to be entitled to require proceeds of the property conveyed as security or of insurance on that property received by the bank to be applied on the debt owing to the bank. The liability of the appellant was extinguished to the extent that funds received by the bank in which the appellant had an equity were sufficient to pay the debt for which the appellant was secondarily liable. The right of the insurance company to acquire by subrogation or assignment security held by the bank as collateral to the debt owing to the bank does not enable the insurance company to acquire a cause of action in favor of the bank against the appellant, which was extinguished by the payment of the debt owing to the bank, as the bank was incapable of transferring a cause of action it did not possess. Phoenix Ins. Co. v. Erie Transportation Co., 117 U. S. 312, 6 S. Ct. 1176, 29 L. Ed. 873; Phoenix Ins. Co. v. Chadbourne (C. C.) 31 F. 300.

"It is not disclosed that it was inconsistent with any right acquired by the insurance company for the appellant as well as the bank, to be a beneficiary of the loss payable clause, which by operation of law is read into the policy issued, or of the mortgage or deed of trust referred to in that clause. That deed of trust by its terms having the effect of securing the appellant against loss by reason of his endorsement, the appellant had the right to have the proceeds of the property conveyed as security, or of insurance on such property, applied on the debt to the bank, and to the extent that debt would be paid as a result of such application, the payment of the loss by the insurance company did not entitle it to

acquire by subrogation or assignment from the bank the right to recover against the appellant Wager v. Providence Ins. Co., 150 U. S. 99, 14 S. Ct. 55, 37 L. Ed. 1013."

It is true that the rider attached to the policy, *supra,* was a separate and independent contract between the Insurance Company and C. I. T. but the provision of that contract which is relied upon by plaintiff was one which changed the position of Orrell as accommodation endorser in this: The terms of that agreement placed it within the power of the Insurance Company to merely claim non-liability and thereupon take as assignment of the note and all collateral behind it. The insurance policy was definitely a part of that collateral and when the Insurance Company exercised its option, although there may have been no defense to its liability to the insured, the burden would be placed upon the accommodation endorser who was entitled to look to the Insurance Company for payment of the insurance to institute and maintain a suit against the Insurance Company on a policy of Insurance which he maintains had been discharged by payment.

The new contract between the Insurance Company and C. I. T., if given effect as contended for by the Insurance Company, changed the security available to the accommodation endorser in that it changed the obligation of the Insurance Company so that it could on mere claim of breach of the insurance contract by the insured change its position of insurer to that of assignee-creditor of the accommodation endorser to the detriment of such accommodation endorser.

The insurance contract protected the accommodation endorser to the extent of loss or impairment of security (the airplane) within the coverage of the policy. Such protection was impaired by the clause in the rider, *supra,* under which the Insurance Company purported to take assignment

of the note and collateral and under which the alleged assignment was made by C. I. T.

Plaintiff in error lays great stress on the claim that neither the insured nor the defendant complied with Sections 18 and 19 of the policy, which reads as follows:

"18. In the event of any loss or damage covered hereby, notice thereof shall be given to this Company by telegram as soon as possible after it has come to the knowledge of the insured. Such telegram shall identify the aircraft in question by its number, name or mark and shall briefly state the estimated extent of the loss or damage, and the Insured shall forward within forty-eight hours thereafter full particulars in writing of the loss or damage.

"19. Within sixty (60) days after loss or damage, unless such time is extended in writing by this Company, the Insured shall render a statement to this Company signed and sworn to by the Insured, stating the place, time and cause of the loss or damage, the interest of the Insured and of all others in the property, the sound value thereof and the amount of loss or damage thereon, all encumbrances thereon, and all other insurance whether valid or not covering said property."

In Hartford Fire Ins. Co. v. Redding, et al., 47 Fla. 228, 37 Sou. 62, it was held:

"The requirements in the standard insurance policy that the insured shall give notice of loss and make proofs of loss are conditions precedent to the right to sue, but a failure to give the notice or to make the proofs within the time stipulated will not invalidate the policy or work a forfeiture of the rights of the insured in the absence of a stipulation to that effect, but will merely postpone the day of payment where such notice is given and proofs of loss

made within such time as will enable the insured to bring his suit within the time limited by the policy."

In this case the record shows that the Insurance Company either received proof of loss from one of the parties protected by the policy, C. I. T., or that it made an independent investigation of the loss and unconditionally denied liability.

In Price v. Southern Home Ins. Co. of the Carolinas, 100 Fla. 338, 129 Sou. 748, we said:

"The third plea which denied the plaintiff's ownership of the property was not sustained and the ninth plea which denied plaintiff's right of action on the ground that she failed to supply the defendant corporation with a sworn statement of loss was met by the showing that the defendant denied all liability under the policy."

In 52 A. L. R. 238, it is said:

"The right of the insurer to subrogation to the rights of the mortgagee, upon payment to the· latter of a loss under the policy, depends upon the validity and bona fides of its claim of non-liability to the mortgagor. A mere naked claim is insufficient; it must be based on legal right. Cronenwett v. Dubuque F. &. M. Ins. Co. (1920), 44 Cal. App. 568, 186 Pac. 826; Sun Ins. Office v. Heiderer (1909), 44 Colo. 293, 99 Pac. 39; Frontier Mortg. Corp. v. Heft (1924) 146 Md. 1, 125 Atl. 772; Lowenstein v. Queen Ins. Co. (1910), 227 Mo. 100, 127 S. W. 72; O'Neil v. Franklin F. Ins. Co. (1913), 159 App. Div. 313, 145 N. Y. Supp. 432, affirmed in 1915), 216 N. Y. 692, 110 N. E. 1045."

If there can be difference in degrees of certainty as to the application of the above stated rule, it appears that it would be more certainly available for. the protection of an accommodation endorser than it would be for the insured, the maker of the note and mortgage.

There are other legal principles which might apply to and be controlling if this were a suit against the maker of the note. In such case the right of subrogation and the determination of whether or not there was an assignment rather than a payment of the note secured by the insurance policy, would depend upon whether or not there was such a breach of the conditions of the insurance policy, by the insured as to make the policy uncollectable and the Insurance Company free of liability. This is not a case of that sort.

The second, third, fourth and fifth amended pleas were sufficient to set up the defenses hereinbefore recognized as available in this suit.

On final hearing the plaintiff sought to interpose replication to each, severally, of the amended pleas. The replications were not sufficient to avoid the allegations of the respective pleas.

We see no useful purpose which may be served by quoting the verbose pleas and replications in this discussion. The obligation of the accommodation endorser was discharged by the conduct of the Insurance Company and C. I. T.

No reversible error is disclosed by the record. The judgment should be and is affirmed.

So ordered.

TERRELL, C. J., and WHITFIELD and CHAPMAN, J. J., concur.

BROWN and THOMAS, J. J., dissent.