51 So.2d 435 (1951)
TRIPLE E DEVELOPMENT CO.
v.
FLORIDAGOLD CITRUS CORP.
Supreme Court of Florida, en Banc.
February 23, 1951.
Rehearing Denied April 7, 1951.
*436 Chester H. Ferguson, of Macfarlane, and Ferguson, Allison & Kelly, Tampa, for petitioner.
W.H. Hamilton, H. Gunter Stephenson, Jack Straughn, all of Winter Haven, and Mabry, Reaves, Carlton, Anderson, Fields & Ward, Tampa, for respondent.
CHAPMAN, Justice.
On July 25, 1949, the Floridagold Citrus Corporation owned real and personal property (consisting largely of citrus groves) located in Polk, Brevard and Lake Counties and on the aforesaid date executed a contract to sell said property to the Triple E Development Company for the total sum of $2,048,000.00. The sum of $100,000.00 was paid by the Triple E Development Company to the Floridagold Citrus Corporation at the time the contract of sale was executed. The date of closing the sale, by the terms of the contract as made by the parties, was October 1, 1949, when the additional sum of $250,000.00 would become due and payable. The balance due on the purchase price of the property was to be evidenced by a single promissory note and secured by real estate and personal property mortgages incumbering all the property transferred. A description of the real and personal property involved is not material or pertinent to a decision of this controversy.
Paragraph 7 of the contract of purchase and sale is viz.:
"All hazards and risks to all assets shall continue those of the party of the first part until the transaction is closed on October 1, 1949, and if there is any substantial damage to the assets, including fruit crop, occasioned through fire, windstorm or other causes prior to the closing, not fully covered by insurance, it shall be optional with the party of the second part to conclude or refuse to conclude the purchase without any liability on its part. Should the damage to the assets aforesaid be occasioned, which is not fully covered by insurance, then at the option of the party of the second part it may, by written notice to the party of the first part, terminate this contract without liability, and upon demand the deposit of $100,000.00 heretofore made shall be immediately refunded to the party of the second part. If the loss or damage is fully covered by insurance, the proceeds of such insurance shall be collected and remitted to the party of the second part as soon after the closing of this sale as is possible. It is understood that damage to said property, in order to entitle the second party to relieve itself from the obligations hereof, must be so material as to substantially reduce the value of the remaining property. As an example, it is conceivable that a hurricane could cause substantial damage to the fruit crop now on the trees and the remaining fruit would still be worth as much, or practically so, market value, as the whole would have been, and it is the intent of the parties that if the remaining undamaged property has a market value substantially equal to the value of the whole had there been no damage, the second party shall be obligated to consummate the purchase."
The Floridagold Citrus Corporation, on September 30, 1949, addressed a letter to the Triple E Development Company at Dade City, Florida, about alleged hurricane loss or damages to the fruit then on the groves situated in Polk, Brevard and Lake Counties covered by the contract of sale, which losses or damage occurred August 27, 1949. Pertinent is the following language:
"On or about August 26, 1949, there occurred a hurricane which destroyed an undetermined number of Boxes of citrus fruit then on the trees located on the property being sold to you. Included in the sale, of course, was all citrus fruits as will appear by reference to the contract. Since the hurricane, and up to this date, you have contended that under the provisions of said contract, and particularly *437 paragraph 7 thereof, Floridagold is legally obligated to allow you an abatement on the purchase price agreed in the contract to be paid. We, on the other hand, have expressly denied, and now expressly deny, that under the terms of said contract, and particularly paragraph 7 thereof, that you are entitled to any abatement on the purchase price by reason of the destruction of the citrus fruit by the hereinabove mentioned hurricane.
"The closing date set for the consummation of the sale is October 1, 1949, and you have proposed that the sale be consummated in accordance with the terms of the contract with the understanding that if at any time between the date hereof and November 1, 1950, you should file suit in the appropriate court of Polk County, Florida, to determine whether under said contract you are entitled to an abatement on the purchase price, we will not plead an estoppel or waiver on your part to bring said suit by reason of the closing on this date in accordance with the terms of the contract.
"While, as above set forth, we expressly deny that you are entitled to any reduction in the purchase price by reason of said hurricane, we, nevertheless, agree that should you bring an action between now and November 1, 1950 for the purpose of having the question judicially determined, we will not interpose as a defense an estoppel or waiver by reason of the closing on this date.
"By this agreement not to plead estoppel or waiver against you, is not to be construed as an agreement not to plead any other defense available to this company to any action you may institute, nor shall it in anywise be construed as an admission on our part that you are legally entitled to any reduction in the purchase price by reason of the damage hereinabove mentioned."
On October 1, 1949, W.H. Hamiltin, attorney for Floridagold Citrus Corporation, wrote Chester Ferguson, attorney for Triple E Development Company, and confirmed the agreement that Triple E Development Company would have until November 1, 1950, in which to bring suit to ascertain whether or not the seller of the described property or the buyer thereof should sustain the hurricane losses or damages to the fruit which occurred on August 27, 1949. The contract of sale was in other respects satisfactorily closed and the parties by agreement were to obtain an adjudication by the courts of the hurricane losses or damages to the fruit, as defined by the terms and provisions of the purchase and sale agreement dated July 25, 1949.
The Triple E Development Company, on March 22, 1950 filed in the Circuit Court of Polk County its amended bill of complaint and alleged that on October 1, 1949, pursuant to the contract of purchase and sale the buyer paid to the Floridagold Citrus Corporation, the seller, the additional sum of $250,000.00 and simultaneously executed a note payable to the Floridagold Citrus Corporation in the sum of $1,693,000.00, being the balance due on the purchase price of all of the described property, both real and personal, as described in the contract of purchase and sale. Mortgages securing the payment of the above note, pursuant to the purchase and sale contract dated July 25, 1949, were executed by the Triple E Corporation.
It was further alleged that at the time of the execution of the purchase and sale contract by the parties on July 25, 1949, there were not less than 500,000 boxes of citrus fruit on the trees on the citrus groves covered by the aforesaid contract. On August 27, 1949, after the execution of the contract and prior to the closing date on October 1, 1949, a severe hurricane struck the citrus property and destroyed not less than 162,000 boxes of citrus fruit which were on the trees on July 25, 1949, and the seller failed to deliver the same to the purchaser; it was the obligation and duty of the Floridagold Citrus Corporation, under the purchase and sale agreement, to deliver said 162,000 boxes of citrus fruit to the Triple E Development Company on October 1, 1949, or to permit or allow an abatement of the values thereof as against the agreed purchase price in the total sum of $2,048,000.00. Or since the *438 parties have closed the sale by mutual agreement left open for adjudication by the court the question of the hurricane losses or damages to the fruit, then the value of the 162,000 boxes of fruit should be ascertained and a credit allowed on the original note in the sum of $1,693,000.00 as given by the Triple E Development Company to Floridagold Citrus Corporation as the balance due on the property covered by the purchase and sale agreement.
The Triple E Development Company in its amended bill of complaint prayed (1) for an order or decree construing the rights of the respective parties with reference to the loss of the 162,000 boxes of citrus fruit alleged to have been caused by the hurricane on August 27, 1949, as defined by the purchase and sale agreement dated July 25, 1949, and particularly paragraph 7 thereof; (2) the Triple E Development Company under the purchase and sale agreement was entitled to a credit on its note (previously delivered which represented the balance due on the purchase price of all the property) to the extent of the value of the 162,000 boxes of citrus fruit destroyed by the hurricane; (3) evidence should be taken as to the value of the lost or destroyed fruit and a credit allowed on the original note to the extent of the value of said losses. Attached to and made a part of the amended bill of complaint was a copy of the purchase and sale agreement of the parties and numerous other pertinent exhibits.
The Floridagold Citrus Corporation filed a motion to dismiss the amended bill of complaint on grounds substantially as follows: (1) the amended bill fails to state a claim for relief; (2) the amended bill seeks relief which tends to vary and contradict a written unambiguous contract; (3) the plaintiff is bound by the terms and provisions of its written instrument; (4) the amended bill is a repetition of the allegations of its original bill of complaint; (5) the several issues, questions, claims and contentions alleged in the amended bill were clearly set forth in the original bill of complaint; (6) the amended bill attempts to make out a case by argument rather than by pleading the facts; (7) it affirmatively appears that the plaintiff is not entitled to the relief sought and prayed for. An order was entered below granting or sustaining the motion to dismiss the amended bill of complaint. A review of the order of dismissal by petition for interlocutory certiorari is sought in this Court.
On many occasions we have held that the truthfulness of well pleaded allegations appearing in a bill of complaint when presented to a Chancellor for a ruling on motion to dismiss, as a matter of fact, for the purpose of disposition or a ruling thereon are admitted to be true. Van Woy v. Willis, 153 Fla. 189, 14 So.2d 185. It is not disputed that the parties executed the purchase and sale contract on July 25, 1949, or that they closed the sale agreement on October 1, 1949, or that a hurricane struck the grove property on August 27, 1949. From the allegations of the amended bill on the motion to dismiss it is safe to infer that 162,000 boxes of citrus fruit were destroyed on August 27, 1949. The controlling question presented here on this state of the record is: which party to the contract of sale shall sustain the loss of the 162,000 boxes of citrus fruit caused by the hurricane on August 27, 1949  the buyer or the seller?
This Court, from time to time, has approved certain rules to be observed in the construction of contracts and among them are the following: (1) the contract should be considered as a whole in determining the intention of the parties to the instrument; (2) the conditions and circumstances surrounding the parties to the instrument and the object or objects to be obtained when the contract was executed should be considered; (3) courts should place themselves, as near as possible, in the exact situation of the parties to the instrument, when executed, so as to determine the intention of the parties, objects to be accomplished, obligations created, time of performance, duration, mutuality, and other essential features; (4) if clauses in a contract appear to be repugnant to each other, they must be given *439 such an interpretation and construction as will reconcile them if possible; if one interpretation would lead to an absurd conclusion, then such interpretation should be abandoned and the one adopted which would accord with reason and probability; (5) if the language of a contract is contradictory, obscure or ambiguous or where its meaning is doubtful so that it is susceptible of two constructions, one of which makes it fair, customary, and such as a prudent man would naturally execute, while the other interpretation would make it inequitable, unnatural, or such as a reasonable man would not be likely to enter into, then the courts will approve the reasonable, logical and rationable interpretation. Florida Power Corp. v. City of Tallahassee, 154 Fla. 638, 18 So.2d 671.
On October 1, 1949, the seller transferred to the buyer all of the property described in the purchase and sale agreement, except the citrus fruit destroyed by the August 27, 1949, hurricane. The buyer at the time paid to the seller the stipulated amount of cash and executed a note for the balance due on the purchase price of the property. The payment of the note was secured by mortgages describing all the property transferred and conveyed to the buyer by the seller. The buyer contended on the closing date that it was entitled to an abatement of the agreed purchase price, under the purchase and sale agreement, to the extent of the value of the citrus fruit destroyed by the August, 1949 hurricane. The seller denied that the buyer, under the purchase and sale agreement, was entitled to an abatement of the purchase price to the extent of the value of the citrus fruit destroyed by the August, 1949 hurricane. All other details of the transaction by mutual consent were satisfactorily closed but the remaining item of the hurricane loss or damages, which item by an additional and subsequent agreement of the parties was left suspended for adjudication by the courts. See Exhibit "B", Tr. 54.
Pertinent language of paragraph 7 of the purchase and sale agreement of the parties is viz.: "It is understood that damage to said property, in order to entitle the second party (the buyer) to relieve itself from the obligations hereof, must be material as to substantially reduce the value of the remaining property. As an example, it is conceivable that a hurricane could cause substantial damage to the fruit crop now on the trees and the remaining fruit would still be worth as much, or practically so, market price, as the whole would have been, and it is the intent of the parties that if the remaining undamaged property (fruit then on trees) has a market value substantially equal to the value of the whole had there been no damage, the second party shall be obligated to consummate the purchase". The above language indicates that the buyer and seller carefully considered two important items of the transaction viz.: first, the citrus fruit then on the trees of the three groves better described in the contract; and second, which party to the agreement should sustain the losses, if any, which could be caused by a hurricane prior to the closing date on October 1, 1949.
The parties, by their agreement, intended that compensation for the fruit caused by a hurricane should be permitted or allowed only in the event the damage was substantial. It was intended that the damage to the fruit was to be so material as to "substantially reduce" the (market) value of the remaining fruit crop not damaged by the hurricane. If the remaining fruit on the trees  after the hurricane  could be sold on the market for an amount "substantially equal to the value of the fruit crop had there been no (hurricane) damages", then the hurricane damage to the fruit should be sustained by the buyer, otherwise, the hurricane damage should be sustained by the seller. The quoted portions, supra, of paragraph 7 should be construed with the subsequent agreement of the parties identified as Exhibit "B".
It is alleged that the trees on the three groves at the time of the hurricane had not less than 500,000 boxes of citrus fruit and the hurricane destroyed 162,000 boxes thereof. For illustrative purposes, let us assume that this fruit at the time of the hurricane was worth $1.00 per box *440 and the remaining 338,000 boxes of fruit were sold on the market for the sum of $500,000.00, then under the terms and provisions of the purchase and sale agreement and the intention of the parties as reflected by the agreement, the hurricane damages must be sustained by the buyer and not the seller because there did not exist substantial hurricane damages. On the other hand, if the remaining 338,000 boxes of citrus fruit sold on the market for a price or sum of only $338,000.00, then substantial hurricane damages existed as stipulated to by the parties and the loss sustained thereby would fall on the seller and not the buyer.
The order dismissing the amended bill of complaint is quashed.
SEBRING, C.J., and THOMAS and ROBERTS, JJ., concur.
HOBSON, J., concurs specially.
TERRELL and ADAMS, JJ., dissent.
HOBSON, Justice, concurring specially.
I concur in the conclusion reached by Mr. Justice CHAPMAN that the order which was entered by the Circuit Judge dismissing the amended bill of complaint, should be quashed. However, I cannot agree with Mr. Justice CHAPMAN'S construction of paragraph 7 of the contract. A copy of the contract between the parties litigant is attached to the amended bill of complaint as Exhibit "A".
Paragraph 7 of said contract is quoted in full in the opinion prepared by Mr. Justice CHAPMAN. My construction of paragraph 7 of the contract differs from the construction placed upon it by Mr. Justice CHAPMAN in that I hold the view the option given to the vendee "to conclude or refuse to conclude the purchase without any liability on its part" in the event there should be any substantial damage to the assets should not be construed to have any effect whatsoever upon the agreement of the parties in the opening words of paragraph 7, to-wit: "all hazards and risks to all assets shall continue those of the party of the first part until the transaction is closed on October 1, 1949 * * *." Moreover, the formula set forth in paragraph 7 and construed by Mr. Justice CHAPMAN as a formula for determining whether any damage actually existed was not a formula for that purpose but was solely for the purpose of determining whether there was "any substantial damage to the assets, including fruit crop" which would entitle the vendee to exercise its option and "refuse to conclude the purchase without any liability on its part."
Since the "substantial damage formula" was placed in the contract for the purpose only of deciding whether the Petitioner would have the right at its election to refuse to conclude the contract without any liability on its part and recoup the $100,000 which it had advanced at the time of the execution of the contract it cannot be held that it was agreed between the parties that said "formula" would be used in connection with the proviso that "all hazards and risks to all assets shall continue those of the party of the first part until the transaction is closed on October 1, 1949 * * *." This proviso obligated the Respondent to produce and deliver over to the Petitioner on October 1, 1949 all of the assets including, of course, the fruit which was on the trees or in the maternal flower at the time the contract was executed with the possible exception of customary and normal "droppage." The question is one of deficiency in assets and only secondarily a question of value. The duty which rested upon the Respondent was to deliver all assets and if it were unable to do so through no fault of Petitioner then the damages would be gauged by determining the value of assets (fruit) which Respondent failed to deliver at the time (October 1, 1949) it was obligated to deliver such assets.
It is my opinion that the contract between the parties litigant clearly and unequivocally placed all hazards and risks to all assets upon the party of the first part (vendor) until the closing of the transaction on October 1, 1949.
The vendee did not exercise its option in favor of refusing to conclude the transaction and the provision of the contract with reference to said option and the formula therein providing a method of *441 determining whether there was substantial damage did not come into play nor did said provision annul, modify or in any manner affect the provision of the contract which provided that "all hazards and risks to all assets shall continue those of the party of the first part until the transaction is closed on October 1, 1949." Futhermore, the rule applicable to construction of contracts that where there are two inconsistent provisions in a contract the latter takes precedence over the former is invoked only in those cases wherein the inconsistency is definite and unmistakable. A subsequent provision in a contract which is not clearly inconsistent should not be given a construction which would make it so and if it is susceptible of more than one construction the Court should adopt that construction which is consistent with prior provisions of the contract.
The option which was granted to the vendee was for its (the purchaser's) sole benefit and consequently should not be construed to relieve the vendor of any of his obligations under the contract including the express provision that "all hazards and risks to all assets should continue those of the party of the first part until the transaction is closed on October 1, 1949."
The agreement that all hazards and risks to all assets should be those of the Respondent and the option granted to Petitioner, under certain stipulated conditions, to refuse to conclude the transaction are two separate and distinct provisions. They are not interdependent. Each has its purpose and sphere of operation. Therefore it cannot be said, that Petitioner is estopped from suing for reformation of the note and mortgage by a reduction of the face amount of those obligations because of failure on the part of Respondent to deliver all of the assets, nor that Petitioner waived its right to institute and maintain such a suit. But if such were not the case it could not be successfully contended that the Petitioner waived the obligation of the Respondent under the proviso that "all hazards and risks to all assets should continue those of the party of the first part until the transaction is closed on October 1, 1949"; or that Petitioner estopped itself by concluding the transaction and not insisting upon exercising its option, because Respondent expressly agreed in writing that it would not assert a waiver or estoppel against Petitioner if the Petitioner would conclude the deal and leave the dispute of the parties to be adjudicated by a court of competent jurisdiction. The Respondent in its letter written to the Petitioner under date of September 30, 1949 said: "While, as above set forth, we expressly deny that you are entitled to any reduction in the purchase price by reason of said hurricane, we nevertheless, agree that should you bring an action between now and November 1, 1950 for the purpose of having the question judicially determined, we will not interpose as a defense an estoppel or waiver by reason of the closing on this date."
It is, therefore, my conclusion that if the Petitioner herein can establish a deficiency in assets in any amount it should be entitled to a reformation of the mortgage and note by a reduction thereof in an amount equal to the proven value of the assets which were not delivered to the Petitioner on October 1, 1949. If this is not the proper method of determining the amount of reduction in the note and mortgage to which the petitioner may be entitled then we should expressly hold that the proper method of determining such question, in all similar cases where it is agreed that all hazards and risks to all assets should be upon the vendor until the closing of the transaction and transfer of the property, would be to use the formula which the parties used only with reference to the option clause  not that the parties by their unilateral option clause adopted that formula as the proper measure of damages in connection with the provision that all hazards and risks to all assets should be those of the vendor until October 1, 1949.
I agree to the judgment quashing the order dismissing the amended bill of complaint.