Hymen LAKE, Individually, and as Trustee, Plaintiff-Appellant,

v.

FIDELITY AND DEPOSIT COMPANY OF MARYLAND, Defendant-Appellee.

No. 28967.

United States Court of Appeals, Fifth Circuit.

Aug. 18, 1970.

Rehearing Denied Sept. 29, 1970.

John M. Robertson, Orlando, Fla., for plaintiff-appellant.

James C. Rinaman, Jr., George Stelljes, Jr., Jacksonville, Fla., for defendant-appellee.

Before TUTTLE, DYER and CLARK, Circuit Judges.

CLARK, Circuit Judge:

In this dispute over the breadth of indemnity provided by a surety company to an owner, who at the surety's request paid suppliers and subcontractors in preference to the prime contractor's assignee, we find that the district court based its denial of indemnity for the owner's loss in a suit by the assignee upon too narrow a premise of indemnity liability. The record also fails to disclose sufficient facts and circumstances upon which a final resolution of the rights of the parties may be made. Accordingly, the judgment is vacated and the cause is remanded for further findings and conclusions.

This case was tried before the court below without a jury and upon stipulated facts. In the latter part of 1963 the plaintiff, Hymen Lake (Lake) engaged Arra Construction Co. (Arra) as a general contractor to construct a supermarket upon property owned by Lake. The defendant, Fidelity and Deposit Insurance Company (Fidelity) issued performance and payment bonds to Lake, each in the amount of 222,000 dollars. Arra subsequently assigned the proceeds to be received from its contract with Lake to the Colonial Bank of Orlando (Bank) as collateral for a 40,000 dollar loan connected with the refinancing of an unrelated construction project. Lake executed a written consent to the assignment in which he agreed to make all progress payments under the construction contract payable jointly to Arra and the Bank.

Thereafter, two progress payments in the approximate amount of 35,000 dollars each were paid to Arra and the Bank jointly and the entirety of such funds was disbursed to lienors by Arra with the consent of the Bank. By Lake's mistake, the third draw of 49,788 dollars was paid to Arra alone; however, the funds from the check were deposited in the Bank and were solely used to pay lienors on Lake's job.

In early May 1964, the Bank notified Arra that it intended to claim a substan-

tial portion of the proceeds of the next construction draw from Lake, which was in the amount of 73,081 dollars. Arra knew that if this occurred it would not have sufficient funds to complete the job and would then have to default on its contract. Fidelity was informed of the situation and sought to save the job by inducing Lake to by-pass the Bank and make payments directly to lienors. Fidelity knew that Lake was required to make progress payments jointly to Arra and to the Bank and that at least one of the checks had been incorrectly paid to Arra alone.

Lake and his attorneys met with representatives of Fidelity and Arra. Fidelity took the position that the rights of lienors[1] to the funds were superior to those of the Bank since the Bank's rights were no greater than Arra's and the contract between Lake and Arra contained the following paragraph:

> "Anything herein to the contrary notwithstanding, it is understood and agreed that the Owner shall not be obligated to make any progress payments or the final payment if such payment or payments would not be proper payments under the Mechanics' Lien Law of the State of Florida. The contractor hereby affirmatively agrees that the Owner may make any such payments to Lienors provided for under the Florida Mechanics' Lien Law."

Consequently, Fidelity declared it felt safe in giving letters of indemnity to Lake if he would ignore the assignment to the Bank and make future payments to lienors directly until all were paid. Lake agreed and, relying on the indemnification, made the remaining payments as agreed. Prior to each subsequent draw Arra prepared and delivered to Lake a list of lienors showing firms and the amounts then owed to each for materials and labor furnished on this job.

Separate letters of indemnity from Fidelity were written to Lake as each draw was made. The three letters were substantially identical except for dates and amounts. The text of the first letter was as follows:

> "The undersigned, surety on the bond of Arra Construction Company, Inc., in connection with its contract for construction of Publix Super Market Building at Skylake Plaza, Orange County, Florida, has received copy of a letter dated May 14, 1964, from Arra Construction Company, Inc., to Eastern Shopping Centers, Inc., and Skylake Plaza, Inc., Hymen Lake, Trustee, requesting the disbursement of contract funds earned by Arra Construction Company, Inc., on the above project in the form of checks to named suppliers and sub-contractors in the total amount of $73,081.14.

> "This is to advise you that the undersigned, as surety, consents to the payment of funds earned by Arra Construction Company, Inc., in the manner requested in said letter, agrees that such payment will not prejudice or impair any of your rights under our bond, and further undertakes to indemnify you to the full extent of any monies released by you pursuant to said letter from Arra Construction Company, Inc., against all liability which you may sustain or incur by reason of the release of such funds."

Lake's attorneys unsuccessfully attempted to obtain the Bank's consent to this method of payment. Instead, the Bank informed Lake because of the prior erroneous payment to Arra, it intended to sue unless Lake made future payments directly to the Bank. These letters of demand by the Bank were forwarded to Fidelity. Fidelity thereafter issued two more letters of indemnity to Lake covering subsequent draws in the amounts of 31,952 dollars and 225 dol-

---

1. The term "lienors" is taken from the stipulation of the parties. Here, as there, it is limited to the definition set out in § 84.011(10), Fla.Stat. (1963), F.S.A., which states: "Lienor means any person having a lien *or prospective lien* upon real property by virtue of this chapter * * *." (emphasis supplied)

lars, which Lake paid directly to lienors as before.

After payment in full to all lienors there was a balance of 6,056 dollars on the contract price in favor of Arra. Lake offered this sum to the Bank on the condition that it release him from any further claim under the assignment. The Bank rejected that offer and sued Lake for the 49,788 dollars erroneously paid to Arra alone and for the 6,056 dollar balance due Arra on the contract.

Lake immediately notified Fidelity of the lawsuit and sent its attorneys a copy of the complaint. Fidelity denied liability and refused to defend the claim. On the trial of the Bank's claim Lake raised the defense that the rights of the lienors under the contract and the Mechanic's Lien Law of Florida were superior to the rights of the Bank under its assignment and accordingly, the Bank should not prevail. However, the Circuit Court of Orange County, Florida, entered a final judgment against Lake for 40,000 dollars plus interest. Lake then notified Fidelity of the judgment and demanded that the judgment be paid or that it be appealed by Fidelity. Again Fidelity denied liability and refused to either appeal the case or to pay the judgment. Lake filed an appeal in the appropriate State Appellate Court and filed this suit against Fidelity. This case was stayed pending the outcome of the appeal. Lake then received an offer of settlement from the Bank for the amount of 30,000 dollars. The judgment against Lake was in the amount of 45,917 dollars which by then with interest and costs totaled approximately 50,000 dollars. Lake immediately notified Fidelity of the offer of settlement and requested that Fidelity participate in the settlement. Fidelity again denied liability and refused to participate. Lake thereupon settled with the Bank by paying 30,000 dollars.

On the basis of these facts, the district court concluded that the letters of indemnity were to be construed prospectively only and did not provide indemnity to Lake for any liability he had already incurred to the Bank because of the erroneous payment of the third draw to Arra alone. This reasoning fails to take into account that Lake may have had a choice of making future payments in such a way as to eliminate any potential liability on account of the prior payment.

The letters cannot be read in a vacuum. Their meaning must be evaluated in the light of the circumstances surrounding their execution and delivery, not to change or vary the words chosen but to give vitality to the intention of the parties. Florida has long and consistently adhered to this principle. Connecticut General Life Ins. Co. v. Craton, 405 F.2d 41 (5th Cir. 1968); Underwood v. Underwood, 64 So.2d 281 (Fla. 1953); Triple E Development Co. v. Floridagold Citrus Corp., 51 So.2d 435 (Fla. en banc 1951); Fla. Power Corp. v. City of Tallahassee, 154 Fla. 638, 18 So.2d 671 (1944); Price v. Southern Home Ins. Co., 100 Fla. 338, 129 So. 748 (1930); Holmes v. Kilgore, 89 Fla. 194, 103 So. 825 (1925).

The position of Fidelity in this matter is clear. It wanted Lake to make his future payments in a manner which would discharge its potential liability under its payment and performance bonds. This wish required that such payments be made to persons who could otherwise assert lien claims against the project and its payment bond. Of course, in view of Arra's financial plight, payments to laborers and materialmen were also necessary to permit the project to remain operational until completion and thus satisfy Fidelity's performance bond obligation. Fidelity's letters promised indemnity to Lake "against *all liability* which you may sustain or incur" by reason of making these payments to suppliers and subcontractors rather than to the Bank.

What we do not know and the trial court did not determine are the full circumstances that existed from the standpoint of the indemnitee, Lake. Two vital questions remain unanswered. Did Lake have the *option* of paying either these suppliers and subcontractors or

the Bank? Were the rights of these lienors so perfected that, even if Lake had exercised an option to pay the Bank instead of them, they could have recovered any funds so paid and left the Bank's loan to Arra still unsatisfied? All we know is that in view of his clear right, contained in the contract paragraph quoted above, to protect himself from lien claims Lake really had only one source of potential liability to the Bank if he paid suppliers and subcontractors instead of the Bank—the prior erroneous payment of 49,788 dollars made to Arra alone—and this potential liability was well known to Fidelity before it delivered its first indemnity letter.

The fact that Lake had a *right* to pay the lienors does not answer the question at issue, which is whether he had a viable *option* to pay the Bank and thereby discharge the potential liability arising from the mispaid third draw.

■ The outcome is controlled not by whether the Bank sued Lake to recover amounts paid to lienors but by whether Lake incurred liability he could have avoided had he refused to make these payments in the form requested by Fidelity. The sole consideration for the indemnity letters was Lake's action in paying these funds in the way requested. If he had a choice to pay such funds to the Bank and thereby relieve himself of potential liability for his past erroneous payment, then it surely follows that he sustained the liability to the Bank which was ultimately fixed on him by the courts of Florida by reason of his refusal to make these payments to the Bank.

■ The district court construed the "all liability" indemnity letters too narrowly. When an indemnity agreement is reasonably susceptible of two equally fair interpretations, one which will provide indemnity and one which will deny it, the interpretation which provides liability must be applied. Da Costa v. General Guaranty Insurance Co., 226 So.2d 104 (Fla.1969).

■ The lien rights involved here are purely creatures of statutory law and the positive mandate of the statutes must be followed to perfect the priorities accorded. Sheffield-Briggs Steel Products, Inc. v. Ace Concrete Service Co., Inc., 63 So.2d 924 (Fla.1953). Fla. Stat. § 84.071 (1963) F.S.A., details the manner in which priority of the liens of these suppliers and subcontractors had to be perfected. The appellant asserts in its brief before this court that "It agreed between the parties in this litigation that notices of liens were filed by laborers and materialmen," but our examination of the record fails to disclose that the precise legal effect of this fact, if it be a fact, was either conceded by the pleadings or stipulated by the parties. Neither the form of such filings nor their effective date is disclosed. We only find that Arra furnished Lake a list of unpaid subcontractors and materialmen, showing the amounts Arra assigned to each, and that Lake used this list in complying with Fidelity's request to pay these claimants in preference to the Bank.[2]

■ Since the district court did not consider the issue which we find to be determinative of the rights of the parties, the cause must be remanded with

---

2. We do also know that a fundamental basis for the State court decision holding against Lake was based upon the lack of perfected liens *at the time of the third payment* as evidenced by the following quote from the State Circuit Court's opinion:

"It is contended that the bank occupies the same position as its assignor, Arra, and that any moneys due on the construction contract would be subject and subordinate to the claims of labor and material men. This would doubtless be true if laborers and materialmen had filed notices of claims of lien according to the provisions of our mechanics lien law, *but such was not done*, and the bank's position and rights would not be affected by the mere existence of the statutory rights of laborers and materialmen to claim liens. Florida East Coast Ry. Co. v. Eno (Fla.) [99 Fla. 887] 128 So. 622." (emphasis supplied)

directions to that court to determine (1) whether the claims of the suppliers and subcontractors involved had ripened into perfected liens on this construction project which deprived Lake of any option to make payment of current estimates to the contractor and the Bank, and (2) if Lake had such an option, whether the Bank could have retained any such payment in the face of individual supplier and subcontractor claims. If the district court determines on remand that such potential lien claimants had perfected their liens by filing or through Arra's notices to Lake or otherwise to an extent where they could have recovered any payment Lake had made to the Bank from either the Bank or Lake, then Lake lost nothing by paying these claimants instead of the Bank; thus he was not entitled to recover on these indemnity agreements and the matter is at an end. However, should that court determine that Lake had a valid option either to make payments in accordance with Fidelity's request or to make payments to the Bank which would have eliminated his potential liability arising from the previous erroneous payment, then the court must proceed to determine the additional issues it pretermitted as to the effect, if any, of the State court's decision on the parties here, the effect of the settlement of that cause upon Lake's right to seek indemnity for the settlement payment, and Lake's right to recover attorney's fees and expenses connected with the State court action and in the instant cause. Obviously, this opinion should not be read to either make or intimate any decision on any issue presented to the district court by this remand.

The final judgment of the district court entered July 22, 1969 is vacated and this cause is remanded for further proceedings in accordance with this opinion. The assessment of costs on this appeal shall follow the taxation of costs by the court below, as determined after the outcome of this remand.

Vacated and remanded.