**UNITED STATES CASUALTY COMPANY, a corporation, v. J. H. GODWIN.**

27 So. (2nd) 612                                      June Term, 1946
October 25, 1946                                 Special Division B
Rehearing denied November 2, 1946

*Ragland, Kurtz & Layton,* for appellant.

*Will O. Murrell* and *Edgar W. Waybright, Jr.,* for appellee.

BARNES, Circuit Judge:

D. W. Howell appears to have been the owner of an automobile and an employee of Foremost Dairies Inc. of the South. The "Foremost" defrayed operational expenses incidental to the use of the car. It was used by Howell for his personal use when not used by him for the benefit of "Foremost."

"Foremost" and Howell were sued jointly by reason of an accident by means of the operation of such car by Howell and judgment was rendered against them. "Foremost" appealed and Howell did not. On appeal the judgment against "Foremost" was reversed.

Thereupon appellee Godwin, the judgment creditor, brought garnishment proceedings against appellant here resulting in a directed verdict against the "Casualty Company" based on an insurance policy issued to "Foremost" by the "Casualty Company."

Appellant Casualty Company contends that the policy did not protect D. W. Howell and for that reason the trial court erred in directing the verdict and rendering the judgment against it on such policy.

To this appellee replied that Howell was protected under the terms of the policy and furthermore appellant was estopped to deny that such protected Howell against the hazards upon which the judgment is predicated.

Quere: Does this policy protect an employee of the named insured against liability resulting from the driving by such employee of his own car which car was maintained by the named insured?

The policy of insurance covered liability of the named insured ("Foremost") caused by accident and occasioned by:

Division 1. Automobiles owned by the insured;

Division 2. Hired automobiles (by "Foremost") when not registered in the name of "an employee or agent of the named insured who is granted an operating allowance of any sort for the use of such sutomobile" (see conditions).

Division 3. Non-owned Automobiles. "The use, by any person other than the named insured, of any non-owned automobile of the private passenger type in the business of the named insured as stated in the declarations, and the use in such business, by an employee of the named insured, of any non-owned automobile of the commercial or truck type if such use of such automobile is occasional and infrequent."

The policy defines "insured" (when amended by the endorsement of July 1, 1942) as follows:

"III. DEFINITION OF 'INSURED.' The unqualified word 'insured' includes not only the named insured but also, with respect to divisions 1 and 2 of the Definition of Hazards, any person while using the automobile and any person or organization legally responsible for the use thereof, provided . . . the actual use of the automobile is with the permission of the named insured and with respect to division 3 of the Definition of Hazards, any executive officer of the named insured."

The benefit of protection under the policy extends to the named and some unnamed insured.

As extended by "III. Definition of Insured" the policy is stated to include with respect to divisions 1 and 2 "any person . . . responsible for the use thereof" (such automobiles) when "used with the permission of the named insured" and with respect to division 2, "any executive officer of the named insured."

The car in question is not shown to be within divisions 1 or 2 of the Definitions of Hazards, and if so, D. W. Howell would appear to have been covered by the policy.

D. W. Howell is not shown to have been "an executive officer of the named insured" and if so he would have been covered.

The defendant, D. W. Howell, does not appear to actually come within the protection of the policy.

Quere: Was the evidence so conclusive against the "Casualty Company" as to estop it denying that D. W. Howell was covered by the policy so as to justify the directing of a verdict in favor of appellant Casualty Company?

It has often been held concerning a contract to indemnify against certain hazards that when the promisor pursuant to its agreement undertakes to defend the promisee in a suit against the promisee relating to the subject matter of indemnity, that thereafter the indemnifying promisor is estopped to deny its obligation in relation to the hazard presented by the suit.—"an estoppel may be said to arise when a person . . . is concerned in or does some act, . . . which will preclude him from averring anything to the contrary. Or as Lord Coke defined it: 'It is called an estoppel or conclusion, because a man's own act or acceptance stoppeth or closeth up his mouth to allege or plead the truth'." 10 R.C.L. 675.

The most material evidence adduced to establish estoppel was in substance as follows: The defendant, D. W. Howell, testified that the summons served on him was turned over to "Foremost;" that he did not hire any lawyers but was sent to Mr. C. C. Howell, Jr., by Mr. Kurz; that Mr. C. C. Howell, Jr., represented him but he did not make any contract with him for the representation; that Mr. Kurz told him he did not think that he could properly represent both the Company and him and that he had made arrangements for him to see Mr. C. C. Howell, Jr.; that he did not know whether or not Mr. Kurz was attorney for appellant; he received a bill from Mr. C. C. Howell, Jr., but did not pay it. Mr. Kurz did not tell him that the Company would furnish him a lawyer but made arrangements for him to see Mr. Howell and he went to see him; that he paid no attention to the summons as he felt that the attorneys for the "Foremost" would call him when wanted. When he discussed the case with Mr. Kurz he was told that Mr. Kurz could not represent him as there might be conflicting interests and that he should have other attorneys; that Mr. Kurz said he had talked with Mr. C. C. Howell and to go see him.

Mr. Louis Kurz testified that he defended "Foremost"; after going into it he felt he could not properly represent

both the company and the individual defendant and suggested to Mr. Howell that he should have other counsel; that either he suggested it originally or Mr. Howell told him that he had nobody in mind and then suggested Mr. C. C. Howell, Jr., and called to ask him whether he was in a position to represent D. W. Howell; that the summons was sent to him by "Foremost" and that the bill or services was rendered against "Foremost" and was paid by check of U. S. Casualty Company; that Mr. C. C. Howell, Jr., told him he had sent a bill to D. W. Howell but had not been paid; that he handled the matter and sent a bill to "Foremost"; that the bill was rendered to "Foremost" but was paid by U. S. Casualty Company, which carried the insurance of "Foremost"; that he represented U. S. Casualty Company only in suits in which "Foremost" was involved; that he made a lump sum charge and paid Mr. Howell's bill out of that.

There is other testimony but the foregoing are the principal facts relating to estoppel in respect to the "Casualty Company."

It is our conclusion that the evidence of estoppel against the appellant was not so conclusive as to justify the directing of the jury to find a verdict against it.

Reversed.

CHAPMAN, C. J., BROWN and THOMAS, JJ., concur.