373 So.2d 392 (1979)
Sara M. ELLENWOOD, As Personal Representative of Estate of Webster K. Ellenwood, Appellant,
v.
SOUTHERN UNITED LIFE INSURANCE COMPANY, a Foreign Corporation, Appellee.
No. MM-90.
District Court of Appeal of Florida, First District.
July 20, 1979.
Rehearing Denied August 15, 1979.
*393 Joseph A. Lane and R. Michael Kennedy of Kinsey, Vincent, Pyle, Williams & Tumbleson, Daytona Beach, for appellant.
William A. Parsons of Gosney, Cameron, Parsons & Marriott, Daytona Beach, for appellee.
ERVIN, Judge.
If the facts are undisputed and the terms of an insurance contract ambiguous was it error for the trial court to deny a motion for directed verdict in favor of the estate of decedent-insured? We conclude that it was and reverse with directions that judgment be entered for the estate.
Webster K. Ellenwood, the insured, on the date he applied for credit life insurance *394 securing a $10,000 note maturing in two months, was suffering as he knew, from emphysema and diverticulitis. Unknown to him, and undiagnosed at that time, was that Ellenwood was then probably suffering from acute leukemia,[1] a disease from which he died 26 days after the application was filled in and the premium accepted by the insurer's agent. No questions were asked him by the insurer's agent as to his health, nor did the application make reference to any evidence of insurability.[2] Indeed, at trial, an officer of the insurer testified that the company's underwriting standards did not require such evidence for loans less than 90 days. Following the death of Mr. Ellenwood, the insurer denied coverage based upon the terms of the Evidence of Insurability clause of the master policy[3] which provided:
EVIDENCE OF INSURABILITY. The Company may require evidence of insurability satisfactory to it with respect to each eligible debtor who applies for insurance hereunder with respect to an indebtedness. If the company finds that any applicant is not an insurable risk according to its underwriting standards, it reserves the right to decline the insurance on the life by indicating its intention in writing to the creditor within 31 days from the time the individual Certificate was received by the Company. If the debtor should die during the 31 days, the insurance shall be deemed to have been in effect if the Company, acting on its regular underwriting methods, would have accepted the insurance. Any premium paid under this policy for insurance not granted will be refunded to the Creditor on demand. (emphasis supplied)
The case went to trial upon plaintiff's complaint seeking both a declaration of her rights under the policy as well as damages. Both the estate and the insurer moved for directed verdicts which were denied. At the conclusion of the trial the jury returned a verdict in favor of the insurer.
Southern Life bases its denial of coverage primarily upon the third sentence of the above clause, reasoning that since Mr. Ellenwood died within 31 days after the application was received by it, the insurance could not be deemed to have been in effect because Southern Life, acting on its regular underwriting methods, would not have issued the insurance once it discovered that Mr. Ellenwood was afflicted with leukemia. The estate responds that the sentence relied upon by the insurer must be considered within the context of the entire clause since the facts show that the insurer never required any evidence of insurability, either before Ellenwood died or 31 days after the certificate was received by it. As a result, it continues, the third sentence of the clause is ambiguous and consistent with the interpretation that the insurer's right to deny coverage existed only if it first required evidence of insurability.
Upon the facts presented there was no reason for the case to be presented to the jury. If the language of a contract is unambiguous and not subject to conflicting inferences, its construction is for the court, not the jury. Upchurch v. Mizell, 50 Fla. 456, 40 So. 29 (1905); Friedman v. Virginia Metal Products Corp., 56 So.2d 515 (Fla. 1952). If, on the other hand, the facts are not in dispute (as here they were not since the evidence clearly showed that no evidence of insurability was ever requested), and there is an ambiguity in the policy, it is within the province of the trial judge  not the jury  to resolve the ambiguity as a matter of law. Cf. United Services Auto. Assoc. v. Porras, 214 So.2d 749 (Fla. 3d DCA 1968); New Amsterdam Casualty Co. v. Addison, *395 169 So.2d 877 (Fla. 2d DCA 1964); United Services Auto. Asso'n. v. McCray, 348 So.2d 6 (Fla. 3d DCA 1977). Under either theory the trial court should have granted a motion for directed verdict either at the request of the insurer or the insured's estate since there was clearly no factual issue for a jury to resolve. See Furr v. Gulf Exhibition Corp., 114 So.2d 27, 29 (Fla. 1st DCA 1959).
This brings us to the next question whether, considering the commonly accepted rules governing the construction of contracts, the coverage clause of the policy was ambiguous? First, we are enjoined both by statute, Section 627.419(1), Florida Statutes (1977), and by case law, e.g., Price v. Southern Home Ins. Co., 100 Fla. 338, 129 So. 748 (1930); Feldman v. Central Nat. Ins. Co., 279 So.2d 897 (Fla. 3d DCA 1973); James v. Gulf Life Ins. Co., 66 So.2d 62 (Fla. 1953), from considering an isolated sentence in a policy as determinative on the question of coverage. Rather the entire contract must be construed according to its terms and conditions and, if an ambiguity is found, the general principle is of course that such ambiguity must be construed against the party who drew the contract or chose the language used. 18 Fla.Jur., Insurance, § 407 (1971). Finally, where the terms of an insurance policy are susceptible to two interpretations, that interpretation which sustains the claim for indemnity, or which allows the greater indemnity will be adopted. Inter-Ocean Casualty Co. v. Hunt, 138 Fla. 167, 189 So. 240 (1939); Dorfman v. Aetna Life Ins. Co., 342 So.2d 91 (Fla. 3d DCA 1977); Cavalier Ins. Corp. v. Myles, 347 So.2d 1060 (Fla. 1st DCA 1977).
We conclude, after examining the Evidence of Insurability clause, that it is susceptible to two different interpretations: First, that coverage automatically occurs if the insured survives 31 days after the certificate was received by the company, but, if the insured dies in less than the 31 days, and since the insurer, acting on its regular underwriting methods, would not have accepted insurance on the life of Mr. Ellenwood, no coverage ever accrued. Second, that the third sentence of the clause prohibiting coverage is dependent upon the occurrence stated in the first two sentences of the clause, i.e., that the company first require evidence of insurability with respect to each person who applies for insurance.
The 31-day time span, stated in the third sentence, cannot be determined without reference to the second sentence in the clause, and it clearly has no meaning separate and apart from the prior sentence. The reference gives it the following meaning: "If the debtor should die within 31 days from the date the individual certificate was received by the Company... ." Once, however, reference to the preceding sentence is made, the following questions arise: Did the insurer intend to limit its liability only as to deaths which occurred within 31 days from the time it received the certificate? Or was its intention to restrict liability to that 31-day period while it was simultaneously conducting an investigation to determine the applicant's insurability? The 31-day period as expressed in the second sentence is inextricably linked to that phrase found in the first part of the sentence requiring the insurer to find that an applicant is not an insurable risk according to its underwriting standards before it is permitted to decline an application for insurance. On the other hand, if it conducts no investigation within the 31 days, it is given no right thereafter to decline an application on the ground the applicant failed to meet its underwriting standards.
The third sentence is obviously ambiguous and susceptible to varying interpretations. We think an altogether reasonable construction is that since the insurer failed to exercise its option to require evidence of insurability within the applicable 31-day period, it could not thereafter negate coverage by reliance upon the third sentence since the insurer's request for evidence of insurability operated as a condition precedent to perfect the insurer's right to decline coverage.
The insurer argues that the estate is relying upon the doctrine of waiver and estoppel, *396 based upon the conduct of the insurer, and that the doctrine is not applicable to matters of coverage as distinguished from grounds for forfeiture, as stated in Six L's Packing Co. v. Fla. Farm Bureau Mut. Ins. Co., 268 So.2d 560 (Fla. 4th DCA 1972), cert. dism., 276 So.2d 37 (Fla. 1973). While the estate contends that the insurer should be estopped because it failed to make any inquiry as to Ellenwood's health at the time the application was submitted, it contends also that an ambiguity existed in the coverage clause of the policy. The Six L's decision was not concerned with any question of ambiguity. It instead decided only that the insurer was not estopped from denying a claim made on the policy as to a value report filed after a loss, although over a six-year period the insurer had consistently accepted delinquent value reports covering the contents of plaintiff's tomato packing shed. The policy clearly and unambiguously required the reports to be filed prior to the loss, and the last report filed before the fire occurred reported that there were no contents within the shed.
As previously observed, an ambiguity exists in the coverage clause of the policy before us. While the doctrine of waiver and estoppel, based upon the conduct or action of the insurer, is not available to bring within the coverage of a policy risks expressly excluded from the policy, United Casualty Co. v. Godwin, 158 Fla. 64, 27 So.2d 612 (1946); Six L's Packing Co. v. Fla. Farm Bureau Mut. Ins. Co., supra, if, however, the exception or restriction of a liability clause is ambiguous or uncertain, without reference to any question of waiver and estoppel, the clause will still be construed against the insurer and liberally in favor of the insured in order that the purpose of insurance, i.e., indemnity or payment to the insured, shall not be defeated. Queen Ins. Co. v. Patterson Drug Co., 73 Fla. 665, 74 So. 807 (1917); Price v. Prudential Ins. Co., 98 Fla. 1044, 124 So. 817 (1929).
Having determined that an ambiguity exists in the Evidence of Insurability clause, the case is remanded to the trial court to enter judgment in favor of the estate. Appellant's motion for appellate attorney fees is granted and the cause is remanded to the trial court for the entry of an appropriate award.
Reversed and remanded with directions.
McCORD, Acting C.J., and LARRY G. SMITH, J., concur.
NOTES
[1] This condition was diagnosed six days after the note and credit-life application were executed. It was probable, according to medical testimony at trial, that the disease existed on the date Ellenwood applied for the insurance.
[2] Since the application form did not include any such questions, Ellenwood was under no duty to volunteer information of known physical conditions. See Carner Bank of Miami Beach v. Block, 260 So.2d 282 (Fla. 3d DCA 1972).
[3] This policy was not released by the insurer until sometime following Mr. Ellenwood's death, upon request of counsel for the estate.