Kenneth E. WEINGART and wife, Dorothy P. Weingart and BJS Builders, Inc., a defunct Florida corporation, Plaintiffs-Appellants,

v.

ALLEN & O'HARA, INC., a Tennessee corporation and Omnicon, Inc., a Tennessee corporation, Defendants-Appellees.

No. 80–5443.

United States Court of Appeals, Fifth Circuit. Unit B

Sept. 4, 1981.

Russell Morton Brown, West Palm Beach, Fla., John J. Pichinson, Corpus Christi, Tex., Bodine & Gregory, Edmund Bodine, Tampa, Fla., for plaintiffs-appellants.

Ted R. Manry, III, David J. Kadyk, Marvin E. Barkin, Tampa, Fla., for defendants-appellees.

Before MILLER *, Judge, and FRANK M. JOHNSON, Jr. and THOMAS A. CLARK, Circuit Judges.

FRANK M. JOHNSON, Jr., Circuit Judge:

Plaintiffs-appellants Kenneth and Dorothy Weingart filed this diversity action alleging breach of contract and fraud.[1] Plaintiffs, owners of BJS Builders, Inc., averred that defendants-appellees Omnicon, Inc., and Allen & O'Hara, Inc. [Allen], as prime contractors, breached an oral agreement to pay federal payroll withholding taxes owed by plaintiffs on the payrolls relating to four construction subcontracts between defendants and subcontractor BJS. After a jury returned a verdict in favor of plaintiffs on both the breach of contract and fraud claims, the district court granted defendants' motion for judgment n. o. v. and in the alternative for a new trial. We affirm in part and reverse in part.

After BJS encountered financial difficulties, Allen agreed to orally amend the sub-

---

* Judge of the United States Court of Customs and Patent Appeals, sitting by designation.

1. Plaintiffs originally filed their action in their individual capacities. An amended complaint added BJS, a dissolved corporation, *pro forma.*

contracts. Plaintiffs claim that defendants amended the subcontracts to provide that defendants would pay to BJS the net payroll for BJS's employees, and that defendants would also pay to the appropriate federal depository bank the corresponding federal payroll withholding taxes. Defendants admitted in their defense that Allen had orally agreed to amend the mode of payment under the subcontracts so that Allen would pay to BJS the net payroll, but defendants denied plaintiffs' claim that they agreed to pay the corresponding federal payroll withholding taxes.[2]

The jury found that defendants orally agreed to pay all federal payroll withholding taxes owed by plaintiffs with respect to the subcontracts and answered special interrogatories in favor of plaintiffs on both the breach of contract and fraud claims. The district court granted defendants' motion for judgment n. o. v. and their motion in the alternative for a new trial on several different grounds.

This suit arose out of a dispute between the defendant prime contractors and subcontractor BJS with respect to four subcontracts entered into in 1972 and 1973 on construction projects. Those projects were: (1) River Run Apartments; (2) Halifax River Apartments; (3) Boot Lake Apartments; and (4) Hollows Apartments. The Hollows project was located in Louisiana while the other three projects were located in Florida. The subcontracts for the River Run, Halifax River, and Hollows projects were between BJS and Allen, while that for the Boot Lake project was between BJS and Omnicon.

The last of the four subcontracts, that for the Hollows project, provided for advances for actual labor costs from Allen to BJS because BJS by that time was experiencing financial difficulties. The Hollows subcon-tract did not provide that Allen would deposit BJS's payroll taxes. There was evidence that Allen advanced funds to BJS on a net payroll basis, against the lump sum due under the subcontract. Mr. Weingart testified that officers of Allen orally agreed to amend the Hollows contract to provide for the direct deposit of BJS's payroll taxes by Allen.

Mr. Weingart testified that in August 1973 officers of Allen orally agreed that beginning in September 1973 Allen would advance to BJS the net payroll on the Florida projects (River Run, Halifax River and Boot Lake) and that Allen would directly deposit BJS's federal withholding payroll taxes. Weingart further testified that in April 1973 BJS and Allen had agreed that Allen would advance to BJS, on the Florida subcontracts, an amount to cover all payrolls, including payroll taxes owed by BJS. There was evidence that Allen advanced funds to BJS through August 1973 for its gross payroll and operating overhead on the three Florida subcontracts. There was also documentary evidence that beginning in September 1973 Allen began advancing, on the Florida projects, only the net payroll, i. e., the payroll expenses less the payroll taxes. An Allen official testified that he informed Weingart in September 1973 that Allen would no longer fund BJS's payroll taxes and that Allen would "take the risk" with respect to payroll tax liability. The evidence reflected that the decision by Allen to advance only the net payroll was made because Allen had decided to take over BJS's employees in order to complete the projects. Allen took over BJS's employees on the Florida projects in October 1973 and on the Hollows project in November 1973.

Plaintiffs did not claim that defendants had any obligation to pay the payroll taxes

2. Omnicon, a wholly-owned subsidiary of Allen, was the contractor on only one of the subcontracts. The other three subcontracts were entered into between Allen and BJS. Although plaintiffs alleged that defendants orally agreed to pay BJS's payroll taxes, the only evidence that they introduced was that the agreement was made by officials of Allen. Defendants' own documentary evidence showed, however, that the officials of Allen had acted on behalf of Omnicon with respect to the subcontract between Omnicon and BJS; that evidence demonstrated that Allen had also agreed to amend the mode of payment under Omnicon's subcontract with BJS.

on the Florida projects prior to September 1973, the effective date of the alleged oral agreement. Defendants denied making any agreement to deposit BJS's payroll taxes directly, although they admitted that Allen had for a time agreed to advance funds for BJS's gross payroll expenses.

In March 1974 the IRS filed liens against BJS for unpaid federal withholding payroll taxes. Subsequently a tax lien covering the third and fourth quarters of 1973 was filed against the Weingarts individually.

In February 1974 Allen instituted suit against the Weingarts in North Carolina state court alleging non-performance of the River Run and Halifax River subcontracts and breach of a guaranty of completion with respect to those subcontracts. The Weingarts answered, raising no affirmative defenses except a setoff based upon Allen's alleged oral agreement to pay payroll taxes owed by BJS. Paragraph A of that setoff alleged that Allen had promised to pay BJS's payroll on the two subcontracts at issue in that suit and that Allen had submitted to BJS only the net payroll and had withheld all payroll taxes owed by BJS.

In October 1974 the defendants filed an action against the Weingarts and BJS in Florida state court for breach of the four subcontracts at issue in this case as well as breach of a guaranty of completion. The Weingarts and BJS counterclaimed alleging that the defendants breached the four subcontracts.

In July 1975 plaintiffs and Allen executed a settlement agreement in which the parties agreed to settle and resolve all claims by all parties, which claims were the subjects of the separate state court suits in North Carolina and Florida, *except* that the parties reserved those claims and issues raised by paragraph A of the setoff, *infra* note 3, pled in the North Carolina suit.

In August 1975 plaintiffs and defendants Allen and Omnicon executed a release in which the parties agreed to release and discharge "any and all claims and demands growing out of any matter or thing whatsoever" except the matters and claims raised by paragraph A of the setoff pled in the North Carolina suit and the rights reserved to the parties in the settlement agreement.

In 1977 Allen entered into a settlement with the IRS in a suit brought by the IRS to recover the third and fourth quarter 1973 unpaid withholding payroll taxes owed with respect to the subcontracts at issue in this case. The suit was brought pursuant to I.R.C. § 3505(b), 26 U.S.C.A. § 3505(b), which provides, with respect to federal withholding payroll taxes, for liability of a third person who advances funds for the purpose of paying wages of an employer where that third party has actual knowledge that such employer will not or is unable to pay or deposit those taxes.

In their complaint plaintiffs sought compensatory damages for breach of the alleged oral amendment and compensatory and punitive damages for fraudulent misrepresentation that defendants would pay the payroll taxes. The defendants answered pleading several affirmative defenses, including release, waiver, the statute of frauds, the Weingarts' lack of individual claims, and failure to state a claim for punitive damages.

The jury answered special interrogatories in favor of the plaintiffs and found on the breach of contract claim that defendants orally agreed to pay all federal payroll withholding taxes and that plaintiffs did not release their claim. As to the fraud claim, the jury found that defendants' promise to pay the payroll taxes was a misrepresentation and that plaintiffs did not release their claim. Although the same jury instruction on damages was given on both the breach of contract and fraud claims, the jury awarded plaintiffs only $28,000 compensatory damages on the contract claim but on the fraud claim awarded $201,252 as compensatory damages and $75,000 as punitive damages.

The district court relied upon several separate grounds in granting defendants' motion for judgment n. o. v. or in the alternative for a new trial. The district court granted judgment n. o. v. on the ground that plaintiffs waived their fraud claim by

failing to plead it in the prior North Carolina and Florida state court suits because their fraud claim was both a compulsory counterclaim and a defense required to be affirmatively pled under North Carolina and Florida rules of civil procedure. The court alternatively determined that plaintiffs waived their fraud claim by reason of the settlement agreement because they failed to raise that claim in the setoff which they pled in the North Carolina suit, which setoff was expressly excepted from the settlement agreement. The court did not submit the waiver issue to the jury but rather ruled on it as a question of law.

The district court found that the jury's responses to the special interrogatories on the release issue were erroneous as a matter of law. The release covered all claims arising out of the four subcontracts except for the claims raised in paragraph A of the setoff in the North Carolina suit. That suit concerned only two of the subcontracts: River Run and Halifax River. The court concluded that paragraph A of the setoff could not be read to include a fraud claim. The court further concluded that the breach of contract claim relating to the two projects not at issue in the North Carolina suit, i. e., the Boot Lake and Hollows projects, was released. The court thus granted defendants' motion for judgment n. o. v. on the fraud claim and the breach of contract claim relating to the Boot Lake and Hollows projects. Alternatively, the court granted defendants' motion for a new trial on the release issue because the jury's findings as to the release of the fraud claim and the part of the breach of contract claim relating to the Boot Lake and Hollows projects were against the clear weight of the evidence.

The district court also granted judgment n.o.v. as to the portion of the plaintiffs' breach of contract claim relating to the subcontracts mentioned in paragraph A of the setoff, the River Run and Halifax River projects. The court's ruling was based upon the fact that Allen had paid to BJS on each subcontract an amount substantially greater than the respective subcontract prices, and upon plaintiffs' statement to the court that defendants' alleged oral agreement merely modified the payment schedule and did not increase the contract price. Alternatively, the court found the jury's finding on that portion of the breach of contract claim to be against the great weight of the evidence and granted a new trial.

The district court also granted judgment n.o.v. on the ground that plaintiffs' contract claim was barred by the provision of the statute of frauds that an agreement to answer for the debt of another must be in writing to be enforceable. Fla.Stat.Ann. § 725.01.

Finally, the district court granted defendants' motion for a new trial in order to correct a miscarriage of justice because the jury's answers to the special interrogatories on damages were hopelessly inconsistent with the evidence and demonstrated that the jury's findings resulted from confusion, sympathy and prejudice.

In challenging the district court's grant of judgment n.o.v. and in the alternative a new trial, plaintiffs have completely failed to discuss several of the specific grounds relied upon by the district court in its grant of defendants' post-trial motion. Plaintiffs have merely generally asserted that the district court erred in granting defendants' post-trial motion. Defendants insist that plaintiffs, by failing to specify the errors of the district court, have accepted each of those grounds relied upon by the district court which has not been specifically challenged on appeal. The defendants cite plaintiffs' failure to discuss in their appellate briefs the issues of waiver, release, the statute of frauds, and the causation of damages to plaintiffs by defendants' alleged breach of contract.

■ Although plaintiffs have challenged on appeal the district court's grant of judgment n.o.v. or in the alternative a new trial, they have inexcusably failed to discuss most of the specific grounds relied upon by the district court. This Court will ordinarily consider only errors of which the appellant specifically complains, but that rule is not

inflexible. *See Martin v. Atlantic Coast Line R.R. Co.*, 289 F.2d 414, 417 & n.5 (5th Cir. 1961). Although we have carefully considered each of the grounds relied upon by the district court in its grant of judgment n.o.v. or in the alternative a new trial, we must emphasize that this Court does not condone appellants' mere general assertion of error.

■ Initially, we observe the standards for review of the district court's grant of judgment n.o.v. and grant of a new trial. In determining whether a motion for judgment n.o.v. or for a directed verdict should be granted, "[t]he trial court originally, and this Court on appeal, must examine the evidence in the light and with all reasonable inferences most favorable to the party opposing the motion. '[I]f there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair minded men in the exercise of impartial judgment might reach different conclusions, the motion should be denied, and the case submitted to the jury.'" *Williams v. United Ins. Co. of America*, 634 F.2d 813, 815 (5th Cir. 1981), *quoting Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir. 1969).

■ A trial court may, in the exercise of its sound discretion, set aside a verdict and grant a new trial if, in its opinion, " 'the verdict is against the clear weight of the evidence * * * or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict.' " *United States v. Bucon Constr. Co.*, 430 F.2d 420, 423 (5th Cir. 1970), *quoting Aetna Cas. & Sur. Co. v. Yeatts*, 122 F.2d 350, 352–53 (4th Cir. 1941).

■ The district court ruled that plaintiffs' breach of contract claim was barred by the statute of frauds provision that bars an action to enforce a promise to answer for the debt of another person unless that promise is in writing. Fla.Stat.Ann. § 725.-01. The alleged oral promise by defendants to pay the payroll taxes owed by BJS was made to BJS. It is well settled that in order to fall within the statute of frauds a

promise to pay the debts of a third person must be made to a creditor or obligee to whom the third person is then or later becomes under obligation; a promise made to the *debtor* himself to pay or answer for his debt to another is not within the statute. 2 A. Corbin, Contracts § 357 (1950); 3 S. Williston, A Treatise on the Law of Contracts § 460 (3d ed. 1960).

■ Defendants also claim that BJS was dissolved and that the Weingarts could not maintain individual claims to recover for alleged wrongs to BJS. At trial Mr. Weingart testified that BJS was "dissolved" in November 1973. That statement is the only evidence that BJS was dissolved in 1973. No evidence was introduced that the BJS corporation was dissolved in 1973 by any of the means provided by Florida law for voluntary dissolution of a corporation. *See* Fla.Stat.Ann. §§ 607.254 (voluntary dissolution by written consent of all shareholders); 607.257 (voluntary dissolution by adoption of corporate resolution). Nor was there any evidence that articles of dissolution were filed by BJS. Fla.Stat.Ann. § 607.267. Plaintiffs introduced evidence demonstrating that BJS was dissolved for non-payment of taxes as of September 3, 1976. Florida has a three-year windup or liquidation provision for dissolved corporations. Fla.Stat.Ann. § 607.297. Plaintiffs' original complaint was filed in January 1977, and in an amended complaint plaintiffs added BJS, "a defunct Florida corporation, wholly owned by plaintiffs, joined here *pro forma*." Thus BJS was timely named as a party-plaintiff, pursuant to the windup provision of Fla.Stat.Ann. § 607.297.

■ The district court granted judgment n.o.v. on plaintiffs' fraud and breach of contract claims with respect to the Hollows and Boot Lake subcontracts on the ground that plaintiffs released those claims. In August 1975, BJS, the Weingarts, Allen, and Omnicon executed a release in which the parties released each other from "any and all claims and demands growing out of any manner or thing whatsoever" regarding the North Carolina and Florida suits except "those claims and matters" raised by

paragraph A of the setoff that was pled in the North Carolina suit.[3] Paragraph A of that setoff mentioned only the River Run and Halifax River subcontracts. The district court was correct in determining that both of plaintiffs' claims, fraud and breach of contract, with respect to the Hollows and Boot Lake subcontracts, were released, and thus did not err in granting judgment n.o.v. on that basis.[4]

■ The district court also determined that plaintiffs' fraud claim with respect to the River Run and Halifax River subcontracts was released because paragraph A of the setoff, which was reserved in the release, did not state a fraud claim. Thus the court ruled that the jury's finding, in response to special interrogatories, that plaintiffs had not released their fraud claim was erroneous as a matter of law. We conclude that there was evidence of such quality and weight that reasonable and fair minded persons could find that plaintiffs did not release their fraud claim and thus the court erred in granting judgment n.o.v. on that ground.

■ The construction and enforcement of a release or settlement agreement are governed by general principles of contract law. *Florida Educ. Ass'n, Inc. v. At-kinson*, 481 F.2d 662, 663 (5th Cir. 1973); *Travelers Ins. Co. v. Horton*, 366 So.2d 1204, 1205 (Fla.App.1979). Where the language of a contract is unambiguous and not subject to conflicting inferences, construction of the contract is a question of law for the court, not a question of fact for the jury. *Friedman v. Virginia Metal Prod. Corp.*, 56 So.2d 515, 516 (Fla.1952); *Ellenwood v. Southern United Life Ins. Co.*, 373 So.2d 392, 394 (Fla.App.1979). In construing a release agreement, the court must look first to the intent of the parties as expressed in the document itself and, where that intent can be ascertained from the unambiguous language of the instrument, construction of the document is a question of law for the court, not a question of fact for the jury. *See Atlantic Coast Line R.R. Co. v. Boone*, 85 So.2d 834, 842 (Fla.1956). Also, where there is an ambiguity in the contract and the facts are *not* in dispute, it is the province of the court, not the jury, to resolve the ambiguity as a matter of law. *Ellenwood v. Southern United Life Ins. Co., supra*, 373 So.2d at 394.

■ We have carefully examined the release agreement and paragraph A of the setoff and have concluded that the release

3. The release agreement provided:
Certain disagreements between [Allen & O'Hara and Omnicon] and [BJS and the Weingarts] have arisen out of these financial transactions and contracts. It is the intent of this agreement that both [Allen & O'Hara and Omnicon] and [BJS and the Weingarts] release and forever discharge each other from any and all claims and demands growing out of any matter or thing whatsoever except:
(a) Those claims and matters raised by Subparagraph A of a Setoff [that was pled in the North Carolina state court suit] .... It is the intent of this agreement to allow any of the parties to this agreement to assert against any other party to *this* agreement any claim or claims raised by the issues set forth in Subparagraph A of the above mentioned Setoff.
(b) Those obligations and rights established by [the] Settlement Agreement ....
*AGREEMENT*
NOW, THEREFORE, [Allen & O'Hara and Omnicon] and [BJS and the Weingarts], ... doth hereby release and forever discharge each other from any and all claims and de-mands growing out of any matter or thing whatsoever, excepting those matters set forth in Subparagraphs (a) and (b), above.
Paragraph A of the setoff provided:
A. That on both the River Run Apartment subcontract and the Halifax River Apartment subcontract, and pursuant to the terms and' provisions of such sub-contracts, [Allen] promised and agreed to pay the payroll of BJS Builders, Inc. *and in doing so, submitted* only the net payroll and withheld all with-holding, including social security and FICA taxes for which the said BJS Builders, Inc. and [the plaintiffs] will be liable in the sum of $136,059.49, unless the same is paid by [Allen].

4. Similarly, the district court correctly conclud-ed that plaintiffs waived their fraud and con-tract claims, with respect to the Hollows and Boot Lake subcontracts, by reason of the settle-ment agreement, which settled all claims ex-cept those raised by paragraph A *of the setoff* which concerned only the River Run and Hali-fax River subcontracts.

agreement is ambiguous as to whether plaintiffs released their fraud claim. The intent of the parties regarding that issue is a factual dispute and thus is a question to be determined by a jury. We cannot determine as a matter of law that the intention of the parties was to preclude plaintiffs from bringing a fraud claim on the Halifax River and River Run subcontracts. The release expressly stated that it was the intent of that agreement that any of the parties to the release could thereafter assert against any other party any claim or claims raised by the issues set forth in paragraph A of the setoff. The setoff, viewed in light of the intent of the release agreement, can be read in a way other than as restricting the plaintiffs to a single breach of contract claim. The issue raised by the setoff was the existence of an alleged oral agreement, i. e., whether the defendants agreed to pay BJS's payroll taxes, and a jury could determine that a claim or theory upon which plaintiffs could proceed against defendants on the issue of their failure to honor the alleged agreement was fraud or fraudulent misrepresentation. The language of the release suggests that the parties did not intend to limit further litigation to a breach of contract claim by plaintiffs; rather, the release reserved the right of each of the parties to assert any claim fairly raised by the issue of the existence of the alleged oral agreement by defendants to pay BJS's payroll taxes. We do not determine as a matter of law that plaintiffs in fact reserved their fraud claim. We merely conclude that whether plaintiffs did so is a question for the jury because the language of the release is ambiguous in

that regard and the intent of the parties cannot be determined as a matter of law.[5]

Similarly, we disagree with the district court's grant of judgment n.o.v. on the ground that plaintiffs waived their fraud claim by reason of the settlement agreement.[6] The district court ruled on the waiver issue as a matter of law without submitting the issue to the jury, relying upon *Tollius v. Dutch Inns of America, Inc.*, 244 So.2d 467, 472 (Fla.App.1970), *cert. denied*, 247 So.2d 437 (Fla.1971), which held that, where all material facts have been admitted, the issue of waiver is a question of law. In this case the intention of the parties regarding the waiver of plaintiffs' fraud claim cannot be discerned from the ambiguous language of the settlement agreement. The settlement agreement stated that the intent of the parties was to settle and resolve all claims by all parties to that agreement except those claims and issues raised by paragraph A of the setoff. The issue raised by the setoff was whether Allen agreed to honor an alleged agreement to pay BJS's payroll taxes, and a jury could find, with respect to the issue of the existence of the alleged oral agreement, that one claim or theory upon which plaintiffs could proceed was a fraud theory. Although the stated intent of the parties was to reserve in the settlement agreement all claims and issues raised by the setoff, their intent as to reservation of a fraud claim by plaintiffs cannot be discerned from the language of the settlement agreement. The intention of the parties as to the waiver issue is a material fact and we do not rule on that

5. We note that the jury determination of this question is to be guided by the rule that, where the language used is ambiguous, the meaning of that language must be ascertained from the intent of the parties as manifested by the language of the document itself and the surrounding circumstances at the time the agreement was entered into. *See Bared v. Cobo*, 379 So.2d 666, 668 (Fla.App.), *cert. denied*, 388 So.2d 1111 (Fla.1980); *J & S Coin Operated Machines, Inc. v. Gottlieb*, 362 So.2d 38, 39 (Fla.App.1978); *Dade County v. O. K. Auto Parts of Miami, Inc.*, 360 So.2d 441, 444 (Fla. App.1978), *cert. denied*, 379 So.2d 207 (Fla. 1979).

6. The settlement agreement provided that Allen and plaintiffs

agreed to settle their differences arising out of the claims, setoffs and counterclaims which are the subject of the North Carolina Civil Action and the Florida Civil Action. It is the intent of this Agreement to settle and resolve all claims by all parties to this Agreement, which are the subject of the North Carolina Civil Action and the Florida Civil Action, except those claims and issues raised by Subparagraph A of the setoff pled in the North Carolina Civil Action.

issue. We merely conclude that the district court erred in finding as a matter of law that plaintiffs waived their fraud claim and in granting judgment n.o.v. on that basis. The question whether plaintiffs waived, by reason of the settlement agreement, their fraud claim as to the River Run and Halifax River subcontracts is a question of fact for the jury.

The district court also ruled that plaintiffs waived their fraud claim by failure to plead fraud in the North Carolina and Florida suits. Because we have concluded that plaintiffs released their fraud and contract claims as to the Hollows and Boot Lake subcontracts, we need only address plaintiffs' fraud claim with respect to the River Run and Halifax River subcontracts which were the subject of the North Carolina suit. The court based its ruling on the issue of the failure to plead on two grounds: (1) plaintiffs failed to plead fraud as an affirmative defense; and (2) plaintiffs failed to plead fraud as a compulsory counterclaim.

■ Allen agreed with plaintiffs in both the settlement agreement and the release that all claims and issues set forth in the setoff would be reserved. Allen now urges that plaintiffs waived their fraud claim by failure to plead it in the setoff that was pled in the North Carolina suit. That suit in North Carolina did not proceed to judgment; rather, the parties agreed to settle and release all claims except those raised by the issues set forth in the setoff. The parties' intentions as reflected in the settlement agreement were that all claims arising from any issue set forth in the setoff would be reserved. Allen cannot defeat the effect of those express agreements—which was to reserve all claims raised by the issues set forth in the setoff, including, if the jury so determines, a fraud claim—by now claiming that plaintiffs waived their fraud claim by their failure to plead it in the North Carolina suit. The parties did not state in either the settlement agreement or the release that only the claims that were fully pled in the North Carolina suit were to be reserved. Rather, the parties agreed that all claims that were *raised by issues* set

forth in the setoff were excepted. Both the settlement agreement and release reflect the intent of the parties to reserve claims other than those explicitly pled in the setoff, including, if the jury so finds, a fraud claim.

■ The district court also granted judgment n.o.v. and in the alternative a new trial on the portion of plaintiffs' breach of contract claim that was reserved in the setoff that was incorporated into the settlement agreement and the release, i. e., the claims relating to the River Run and Halifax River subcontracts. The court based that ruling on plaintiffs' statement at trial that the alleged oral agreement to pay the federal withholding taxes did not increase the stated contract prices but rather merely modified the mode or schedule of payments. BJS received a substantial overpayment on both subcontracts. Plaintiffs insisted below that the only issue in this case was whether there was an agreement by the defendants to pay or deposit BJS's payroll taxes. They argued in their response to defendants' post-trial motions that all issues concerning the subcontract cost were settled and that the only issue reserved for litigation was the issue whether defendants entered into a separate agreement to pay the payroll withholding taxes. The statement made by plaintiffs' counsel at trial was that the alleged agreement to pay BJS's payroll taxes did not increase the lump sum due under or pursuant to the terms of the original subcontract but rather constituted a separate agreement. Thus we cannot agree with the district court that plaintiffs' breach of contract claim was barred by the fact that the total amount paid by Allen exceeded the amount originally agreed to in the two subcontracts covering the River Run and Halifax River projects, because it is the existence of a separate oral agreement by Allen to pay BJS's payroll taxes that is at issue in this case.

■ Another of the grounds upon which the district court granted defendants' alternative motion for a new trial was that the jury's answers to the special interrogatories

on damages were hopelessly inconsistent with the evidence and demonstrated that the answers were the result of confusion, sympathy and prejudice. The court observed that it granted a new trial in order to correct a miscarriage of justice. We agree that a new trial is required. The plaintiffs claimed the same damages on the same facts under their fraud theory as under their breach of contract theory, and the jury charges and the interrogatories on compensatory damages on each of those theories were identical and yet the jury awarded compensatory damages of only $28,000 for breach of contract and over $200,000 for fraud.

■■■ Defendants argue that the district court's grant of judgment n.o.v. or alternatively a new trial could be affirmed on the basis that the evidence did not support a verdict for fraud and an award for punitive damages. They also contend that the judgment n.o.v. could be sustained on the basis that plaintiffs failed to prove recoverable damages by proper evidence. Although the district court did not rely upon those grounds, an appellee may rely upon any basis in the record in support of the judgment. *Lucas v. American Mfg. Co.*, 630 F.2d 291, 294 (5th Cir. 1980). Because we hold that a new trial is required on the River Run and Halifax River subcontracts and affirm the grant of judgment n.o.v. on the Hollows and Boot Lake subcontracts, we cannot affirm on these two grounds asserted by defendants. A new trial on all remaining issues is required. *See id.* at 294.

■■■ Plaintiffs rely upon I.R.C. § 3505(b), 26 U.S.C.A. § 3505(b), in support of their contention that defendants are collaterally estopped from denying liability to plaintiffs for the amount due to the government for BJS's payroll taxes. This assertion is utterly without merit. Section 3505(b) provides that a person who supplies funds to an employer for the purpose of paying that employer's employees, with knowledge that the employer will not or is unable to pay the payroll withholding taxes, may be held liable for those taxes. Under Section 3505(b), a prime contractor which

advanced payroll funds to a subcontractor has been held liable by the government for unpaid payroll taxes with respect to the wages of the subcontractor's employees; significantly, however, the subcontractor-employer remains liable for the payroll withholding taxes under I.R.C. §§ 3102(b) and 3404. *United States v. Algernon Blair, Inc.*, 441 F.2d 1379 (5th Cir. 1971). Thus Section 3505(b) provides for secondary liability to the government for unpaid payroll taxes. The secondary liability of defendants under Section 3505(b) is not relevant to the existence of the alleged oral agreement by defendants to pay BJS's payroll taxes. Because Section 3505(b) concerns only tax liability to the government, defendants are not collaterally estopped to deny liability to the plaintiffs.

Plaintiffs also argue that the trial court abused its discretion in denying a jury request concerning the amount of an IRS levy against the Weingarts. Because we remand for a new trial, we do not address this issue.

Finally, we note that the trial court failed to adequately consider a possible disqualification issue. Although this problem is unlikely to recur in this case because the trial judge was a visiting judge, we nevertheless believe that discussion of the problem is appropriate. The trial judge informed the parties that he owned three life insurance policies, representing mutual ownership, in Northwestern Mutual Life Insurance Company, which wholly owns the defendant corporations. None of the parties objected to the trial judge sitting in the case.

Section 455(b), Title 28, United States Code Annotated provides in pertinent part that a United States judge shall disqualify himself when he knows that he has a financial interest in a party to the proceeding that could be "substantially affected" by the outcome of the proceeding. "Financial interest" means "ownership of a legal or equitable interest, however small ... except that ... [t]he proprietary interest of a policyholder in a mutual insurance company ... is a 'financial interest' in the organization only if the outcome of the proceeding

could substantially affect the value of the interest . . . ." 28 U.S.C.A. § 455(d)(4)(iii). *See* Canon 3C(3)(c)(iii) of the Code of Judicial Conduct.

The standard of review for this Court in determining whether a judge should disqualify himself is whether the judge abused his discretion. *Davis v. Board of School Comm'rs,* 517 F.2d 1044, 1052 (5th Cir. 1975), *cert. denied,* 425 U.S. 944, 96 S.Ct. 1685, 48 L.Ed.2d 188 (1976). Where a judge has a substantial ownership interest in a party, he must disqualify himself. *E. g., Kinnear-Weed Corp. v. Humble Oil & Ref. Co.,* 441 F.2d 631 (5th Cir.), *cert. denied,* 404 U.S. 941, 92 S.Ct. 285, 30 L.Ed.2d 255 (1971) (25% stock ownership); *State of California v. Kleppe,* 431 F.Supp. 1344 (C.D. Cal.1977) (several hundred shares of stock). However, where a judge's ownership interest in a party is insubstantial, there is no abuse of discretion in the judge's failure to disqualify himself. *E. g., United States v. Sellers,* 566 F.2d 884, 887 (4th Cir. 1977) (judge and family owned less than ½₅th of 10% of stock of party); *United States v. Ravich,* 421 F.2d 1196 (2d Cir.), *cert. denied,* 400 U.S. 834, 91 S.Ct. 69, 27 L.Ed.2d 66 (1970) (ownership of .0072% of outstanding shares).

The Advisory Committee on Judicial Activities of the Judicial Conference of the United States[7] concluded that a judge should disqualify himself when a controlled subsidiary of a corporation in which he owns stock is a party. Advisory Committee Opinion No. 57. Significantly, the Committee also determined that a judge who was insured by a mutual insurance company was not disqualified to hear cases involving that company unless he was also a stockholder.

Advisory Committee Opinion No. 62. *Cf.* Advisory Committee Opinions Nos. 26 and 45 (judge's interest or participation in government-wide health insurance plan with Blue Cross-Blue Shield or another health insurance company does not constitute "financial interest"; further, even if such participation constitutes a financial interest within the meaning of the Code of Judicial Conduct, it is not "substantial").[8]

We do not mean to suggest by our discussion of the disqualification issue that the trial judge acted improperly by sitting in this case. The judge's mere ownership of three life insurance policies, representing mutual ownership, in the parent corporation of a party to the suit does not demonstrate that the outcome of the proceeding could have substantially affected the value of that ownership interest.

AFFIRMED IN PART AND REVERSED IN PART.

**7.** The Committee is now denominated the Advisory Committee on Codes of Conduct.

**8.** E. Thodes, *Reporter's Notes to A.B.A. Code of Judicial Conduct* 71 (1973), states that the Advisory Committee observed that although a policy in a mutual insurance company is a technical legal interest,

> these technical interests, and similar ones, should not be a basis for disqualifying a judge even though the association or company is a party to a proceeding before him, unless the value of his interest could be substantially affected by the outcome of the proceeding . . . .

Thodes further states that

> In Canon 3C(3)(c) the Committee endeavored to set a standard for economic disqualification for indirect and technical interests that assures impartiality and the appearance of impartiality but at the same time makes available to a judge some types of nondisqualifying investments.

